403 So.2d 1199 (1981)
P. H. A. C. SERVICES, INC.
v.
SEAWAYS INTERNATIONAL, INC., Pennzoil Company and Pennzoil Producing Company.
ACOUSTICAL SPRAY INSULATORS, INC.
v.
PENNZOIL COMPANY et al.
Nos. 80-C-2915, 80-C-2928 and 81-C-0366.
Supreme Court of Louisiana.
September 8, 1981.
*1200 John E. Ortego, and Silas B. Cooper, of Cooper, Ortego & Woodruff, Abbeville, for plaintiff-applicant.
Amos H. Davis, and John W. Hutchison, of Voorhies & Labbe, Lafayette, Donald G. Cave, of Cave & McKay, Baton Rouge, Michael J. McNulty, Jr. of Bauer, Darnall, McNulty & Boudreaux, Franklin, for defendants-respondents.
DIXON, Chief Justice.
This is a suit instituted by two unpaid subcontractors who supplied labor and materials for the construction of an offshore drilling platform living quarters unit; defendants are the general contractor and the owner. The primary issue is what, if any, privileges are available to these plaintiffs.
The unit involved in this litigation is a three story steel structure which was built on blocks at a construction site in St. Mary Parish. It was then transported by the owner, Pennzoil Company and Pennzoil Producing Company, and attached to an offshore drilling platform located in the Gulf of Mexico off the coast of Texas.
Pennzoil contracted with Seaways International, Inc. for construction of the unit. This contract was not recorded and no bond was required of Seaways as contractor. Seaways contracted with P. H. A. C. Services, Inc. for installation of plumbing, heating and air conditioning in the unit, and with Acoustical Spray Insulators, Inc. for labor and acoustical materials for the unit.
It is uncontested that P. H. A. C. and Acoustical performed their work in accordance with their subcontracts with Seaways, and that they have not been paid. They *1201 have timely filed lien affidavits, and have instituted suit[1] to enforce their privileges.
Three statutes are relied upon by plaintiffs: R.S. 9:4801 et seq. (Private Works Act); R.S. 9:4861 et seq. (dealing with privileges on oil, gas and water wells); and, in the alternative, R.S. 9:4502 (dealing with privileges on movables). The trial court ruled that the only privilege available to plaintiffs is that granted by R.S. 9:4861 et seq. The Court of Appeal disagreed, and held that only the Private Works Act, R.S. 9:4801 et seq. is applicable. P. H. A. C. Services, Inc. v. Seaways International, Inc., 393 So.2d 117 (La.App. 1st Cir. 1980). This court granted writs on application of all parties.[2] 398 So.2d 527 (La.1981).
R.S. 9:4861 et seq.
R.S. 9:4861 creates a privilege in favor of certain persons who perform work in connection with the exploration for oil, gas or water. That statute provides:
"Any person who performs any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water, or who performs any labor or service in the operation or in connection with the operation of any oil, gas or water well or wells, has a privilege on all oil or gas produced from the well or wells, and the proceeds thereof inuring to the working interest therein, and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks, and other structures thereto attached or located on the lease, for the amount due for labor or service, in principal and interest, and for the cost of preparing and recording the privilege, as well as ten per cent attorney's fees in the event it becomes necessary to employ an attorney to enforce collection. Any person who does any trucking, towing, or barging, or who makes any repairs, or furnishes any fuel, drilling rigs, standard rigs, machinery, equipment, material or supplies for or in connection with the drilling of any well or wells in search of oil, gas or water, or for or in connection with the operation of any oil, gas, or water well or wells, whether or not a producing well is obtained and whether or not such materials, machinery, equipment, services and supplies are incorporated in or become a part of the completed oil, gas or water well, has a privilege on all oil or gas produced from the well or wells and the proceeds thereof inuring to the working interest therein and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks and other structures thereto attached for drilling, equipment and operation of the well or lease, for the amount due for such trucking, towing, barging, repairs, fuel, drilling rigs, standard rigs, machinery, equipment, material, or supplies, in principal and interest, and for the cost of preparing and recording the privilege, as well as ten per cent attorney's fees in the event it becomes necessary to employ an attorney to enforce collection thereof. This privilege is second in rank only to the privilege granted in favor of laborers."
This statute confers a privilege to furnishers of labor or services whose work was done "in drilling or in connection with the drilling of any well," or "in the operation or in connection with the operation of any oil, gas or water well." The parties and the lower courts have focused on whether the work done by plaintiffs is the type of work intended to be protected by this statute. Specifically, the parties' concern has been on whether it is significant that the work done by plaintiffs was performed at a construction site miles away from the lease site.
*1202 Pennzoil maintains that, since the unit was under construction and had never been brought to the well site, the unit was not identified with any particular lease. Plaintiffs point out that at all times the unit was designated for, and was eventually transported to, a specific well site.
It is clear from the statute that in some cases a lien might secure a claim for work performed away from the well or lease. The statute specifically includes persons who perform trucking, towing and barging, even though such services are generally performed away from the leased premises. In the case before us, the living quarters unit was constructed onshore because this was more practical than building it on the well location over the outer continental shelf; the unit at all times was designated for Pennzoil's High Island Block 340 platform.
In interpreting statutes granting liens and privileges for working material furnished, courts have generally construed the statutes strictly against the claimant; the usual contest arises when ultimate liability will be placed on the owner, even though he might have previously paid the contractor, who failed to pay the claimant.
The claim in this case does not appear to be covered by R.S. 9:4861. First, the lien is granted to "any person ... who performs any labor or service ... in connection with the operation" of any oil or gas well. The privilege, however, is on the production, the well, the lease, and "machinery, ... equipment, buildings, tanks, and other structures thereto attached or located on the lease." The lien is further granted for transporting or furnishing "material or supplies ... for or in connection with the operation" of any well; however, the privilege granted is on the production, the well, the lease and "buildings, tanks and other structures thereto attached for the ... operation of the well."
It is clear that the building involved in this case was designed to be used "in connection with the operation" of oil or gas wells. It is not, however, clear that this statute was designed to govern the case where production equipment is constructed for use completely out of this state and on the high seas. The statute seems to contemplate that the lien be on the well, the lease, or property located on the lease. In this case, the building was ultimately located on a lease, but a lease which is completely outside the state. The statute does not purport to affect producing wells outside the State of Louisiana.
R.S. 9:4861 is therefore not applicable.
R.S. 9:4801 et seq.
The Private Works Act, R.S. 9:4801 et seq., confers a privilege to certain persons who supply labor or materials "for the erection, construction, repair, or improvement of immovable property." R.S. 9:4801. The parties agree that the act applies if the living quarters unit is an immovable.
The Civil Code articles on the classification of thing were recently amended. 1978 La. Acts, No. 728, amending the Civil Code of 1870 articles 448-87. Because the revision became effective in 1979, and the operative facts leading to this litigation occurred in 1978, the rights of the parties are governed by the articles as they existed prior to the revision. Nonetheless, examination of the revision provides guidance and insight into a proper interpretation of the pre-amendment articles.
The Civil Code of 1870 divided immovables into three categories: immovables by nature, immovables by destination and immovables by the object to which they are applied. C.C. of 1870 art. 463. The Code attempted to define immovables by nature as things which "can not move themselves or be removed from one place to another." C.C. of 1870 art. 462. This definition was followed by a listing of those things considered to be immovables by nature.
This definition was deleted from the Code by the 1978 revision, because, as explained by the revision's redactors:
"This analytical schemedefinition and illustrationscontradicts reality. Contemporary mechanical means make possible the relocation of immense quantities of earth, timber, buildings, and various *1203 kinds of constructions. It appears, therefore, that immovability by nature under present Louisiana law is a legal fiction based partly on practical considerations and partly on inherent characteristics of things. In the light of contemporary conceptions the only immovables by nature are tracts of land, i.e., portions of the surface of the earth individualized by boundaries." Expose des Motifs of Act 728, 1978 La. Acts, Vol. II, p. 1908.
Immovability is a legal concept and not merely an inherent quality of a thing. Whether a thing is classified as an immovable depends upon whether the legislature has accorded to that thing the preferred status of immovability. Immovability "in fact" is not itself a prerequisite to immovability "in law", and things regarded as immovables by the law might be moved through the application of extraordinary mechanical means. To determine whether this living quarters unit is an immovable by nature, the Code articles listing the things which are immovables by nature should be considered.
The 1870 Code classified as immovables by nature buildings and other constructions. Although the Code did not define these terms, it did provide that buildings and other constructions are immovables regardless of "whether they have their foundations in the soil." C. C. of 1870 art. 464. Integration with the soil was not a prerequisite to immovability under former article 464, and the courts have properly classified as immovables things whose foundations rested upon blocks or posts. See Prevot v. Courtney, 241 La. 313, 129 So.2d 1 (1961) (tractor shed and poultry house); Lafleur v. Foret, 213 So.2d 141 (La.App.3d Cir. 1968) (beagle and chicken brooders); Vaughn v. Kemp, 4 La.App. 682 (2d Cir. 1926) (small wooden frame garage).
Nor did former article 464 require unity of ownership as a prerequisite to immovability. Buildings and other constructions erected by persons other than the owner of the land are nonetheless immovables by nature under the 1870 Code. Buchler v. Fourroux, 193 La. 445, 190 So. 640 (1939); Lighting Fixture Supply Co. v. Pacific Fire Insurance Co. of New York, 176 La. 499, 146 So. 35 (1932); Scardino v. Maggio, 15 La.App. 444, 131 So. 217 (1st Cir. 1930); Vaughn v. Kemp, supra.
The 1978 revision effects several changes. Constructions other than buildings are now classified as movables unless they are component parts of a tract of land. To be a component part of a tract of land, a construction must meet two requirements: it must be permanently attached to the ground, and it must belong to the owner of the ground. C. C. 463, as amended by 1978 La. Acts, No. 728.
The 1978 legislation made no changes in the classification of buildings. Under the revision, buildings which belong to the owner of the ground are considered component parts of a tract of land, C. C. 463, as amended by 1978 La. Acts, No. 728, and, when there is no unity of ownership, the building is considered a separate immovable. C. C. 464, as amended by 1978 La. Acts, No. 728. Thus, under the revision, as under the 1870 Code, buildings are always classified as immovables.
The trial court concluded that the living quarters unit was not a building because it "was not being used as a building; rather it was set upon wooden blocks while it was under construction." The Court of Appeal reversed, correctly noting that there is no codal requirement that a building have its foundation in the soil. Additionally, the trial court's reasoning would frustrate the purpose of the Private Works Act, which is to protect the claims of laborers and workmen. Many lien claimants perform work for the erection of new structures which naturally are not placed into use until completion. If classification must await actual use, then these lien claimants would find themselves unprotected by the act.
We agree with the conclusion of the Court of Appeal that this living quarters unit is a building.[3] As the picture of the *1204 unit demonstrates, the facts speak eloquently for themselves. This is a three story high permanent steel structure with a helicopter landing pad constructed above it, built at a cost of over $400,000. It is designed to house offshore workers. Under prevailing notions, such a structure is a building and is therefore classified as an immovable.
Pennzoil maintains that the unit should not be classified as an immovable because the unit was intended to be moved offshore. The fact that the unit is capable of being moved by a powerful crane does not defeat classification of that thing as an immovable, for, as mentioned earlier, immovability is a legal concept and not an inherent quality of a thing.
Implicit in Pennzoil's position is the concept that classification of a thing as an immovable by nature is somehow contingent upon the owner's intentions. We do not believe the Code granted the owner such flexibility, nor do we believe that immovability by nature should hinge upon such a subjective factor as the owner's intentions. Such a contention may have been meritorious in connection with the 1870 Code's category of immovables by destination, but is not applicable to immovables by nature. As this court has previously explained:
"... there is a vast distinction between immovables by destination and immovables by nature. The status of an immovable by destination can be changed by an act of the landowner, but there is no provision of law that we are aware of, and none has been cited to that effect, that the act of the landowner, or any other person, can change the status of an immovable by nature....
The status of an immovable by nature is never changed by any act of the owner, while the status of an immovable by destination changes according to its use by the owner.... In the instant case, the status of the property could not be changed by the intention or act of the landowner because its status is fixed by law and does not depend upon its use." Buchler v. Fourroux, 193 La. at 477-78, 190 So. at 650-51.
The legislature has determined that a building is an immovable regardless of whether its foundation is integrated with the soil. This three story high permanent steel structure qualifies as a building and therefore is an immovable, and subject to the laws governing immovables. Consequently, the Private Works Act (including R.S. 9:4812) applies to this case.
For the foregoing reasons, the judgment of the Court of Appeal is affirmed, at the cost of defendants.
MARCUS, J., concurs and assigns reasons.
MARCUS, Justice (concurring).
I agree with the majority's conclusion that La. R.S. 9:4861 is not applicable here. Moreover, La.Civ.Code art. 464 (under old law prior to amendment effective January 1, 1979) provided: "Lands and buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature." Clearly, the living quarters unit was a building whose foundation was not in the soil. Hence, it was an immovable by its nature. Accordingly, I respectfully concur.
NOTES
[1] Initially separate lawsuits were instituted, but they were consolidated prior to trial.
[2] Seaways International, Inc. is no longer involved in this litigation, as that party did not appeal the trial court's decision.
[3] In finding that the unit is an immovable, the Court of Appeal relied in part upon language from this court's opinion in Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978). That case dealt with the definition of a building for the purpose of imposing delictual responsibility upon the owner under C. C. 2322. This court was confronted in that case with the question of whether a fixed offshore platform constitutes a building for purposes of article 2322. The heating system in the living quarters unit was found to be a defect, and the unit itself to be an appurtenance to the platform. The classification of the unit under the property law articles was declared to be immaterial to that decision.