ROBERT M. HILL, Circuit Judge:
 

 At issue in this appeal is whether the Louisiana Oil Well Liens Act, La.Rev. Stat.Ann. §§ 9:4861-4867 (West 1983), or the Louisiana Private Works Act, La.Rev. Stat.Ann. §§ 9:4801-4855 (West 1983), governs the perfection of a materialman’s or laborer’s lien against an immovable structure located in United States territorial waters adjacent to the state of Louisiana. We find that the district court correctly decided that the Private Works Act applies but that the basis for its decision was incorrect. We also find that the district court incorrectly determined the time during which appellants were entitled to file their liens pursuant to the Private Works Act.
 

 I.
 

 This controversy arises out of the bankruptcy of St. Mary Iron Works, Inc., (St. Mary) who was the general contractor in a project to construct a three-story offshore crew living quarters unit for McMoran Offshore Exploration Company (McMoran). In connection with this construction contract, St. Mary purchased certain building materials from Coburn Co. of Lafayette, Inc. (Co-burn) and subcontracted the major electrical work to Control Systematologists, Inc., (CSI). The living quarters unit was built on blocks at a construction site in St. Mary Parish, Louisiana, and then transported on October 12,1984, to a location on the Outer Continental Shelf (outside the territorial waters of Louisiana but adjacent to its coast) where it was attached to an offshore drilling platform. Following the anchoring of the unit, St. Mary submitted change orders to CSI. An invoice dated November 14, 1984, reflects that CSI performed work on the anchored unit in the amount of $5,120.84.
 

 St. Mary filed Chapter 11 bankruptcy proceedings on December 17,1984, and listed appellants CSI and Coburn as unsecured creditors. Three days afterwards, on December 20, CSI filed a labor and material-man’s lien for $60,648.66
 
 [1]
 
 against St. Mary
 
 *811
 
 and McMoran in the public records of St. Mary Parish. Coburn filed its lien for $5,953.22 in St. Mary Parish on January 11, 1985. Thereafter, CSI and Coburn filed proofs of claim in the bankruptcy proceedings alleging that they were secured creditors by virtue of their statutory liens.
 

 In order to establish appellants’ status as unsecured creditors, St. Mary initiated an adversary proceeding in bankruptcy court against CSI, Coburn, and other claimants. St. Mary’s position was that the 60-day filing period provided for in the Private Works Act barred appellants’ liens filed sixty-nine and ninety-one days after substantial completion of the project. CSI and Coburn both argued that the Oil Well Liens Act, allowing one hundred eighty days to file, applied. They both argued alternatively that if the sixty-day filing period provided for in the Private Works Act applied, this filing period did not begin to run until November 14 when work was performed pursuant to St. Mary’s change order.
 

 The bankruptcy court found that the Private Works Act, rather than the Oil Well Liens Act, applied and that the sixty-day filing period provided by that statute commenced on October 12,1984, the date when the living quarters unit was “loaded out” and moved to its permanent location on the Outer Continental Shelf. CSI and Coburn perfected a timely appeal to the district court which upheld the decision of the bankruptcy court. Subsequently, CSI and Cobum timely perfected their appeals in this court.
 

 II.
 

 Louisiana law is made applicable to the instant lien controversy by the Outer Continental Shelf Lands Act (the Lands Act), 43 U.S.C. § 1333, which in pertinent part reads as follows:
 

 To the extent that they are applicable and not inconsistent with this Act or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the Outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the Outer Continental Shelf....
 

 The bankruptcy and district courts in finding that the Private Works Act rather than the Oil Well Liens Act applied based their decisions on an opinion by the Louisiana Supreme Court,
 
 P.H.A.C. Services, Inc. v. Seaways International, Inc.,
 
 403 So.2d 1199 (La.1981). That case, like the one before us, involved a materialman’s lien on a living quarters unit constructed in St. Mary Parish and transported to the Outer Continental Shelf.
 
 P.H.A.C.
 
 held that the Oil Well Liens Act “does not purport to affect producing wells outside the State of Louisiana” and that it was not designed “to govern the case where production equipment is constructed for use completely out of this state and on the high seas.” 403 So.2d at 1202.
 

 Appellants Coburn and CSI seek to avoid this holding on two grounds. First, they maintain that
 
 P.H.A.C.
 
 is distinguishable from the instant case by virtue of the fact that the living quarters unit in
 
 P.H.A.C.,
 
 while built in Louisiana, was transported to a location adjacent to the state of Texas. Appellants contend that under the Lands Act, Texas law rather than Louisiana law applied and that
 
 P.H.A.C.
 
 should be limited to cases involving oil leases located off the coasts of states other than Louisiana. This position is concurred in by a Louisiana court of appeals which, in
 
 Louisiana Materials Co., Inc. v. Atlantic Richfield Co.,
 
 486 So.2d 776, 778 (La.Ct.App.),
 
 writ granted,
 
 488 So.2d 1013 (La.1986), held that
 

 [t]he property in question in
 
 P.H.A.C.
 
 was located off the
 
 Texas
 
 coast, and, therefore, would not be subject to any Louisiana law. Any attachment of property in that case should have been accomplished by means of Texas law.
 

 
 *812
 
 We conclude that the Well Liens Act is applicable to that property located on the Outer Continental Shelf off the Louisiana coast pursuant to 43 U.S.C. § 1333(a)(2)(A).
 

 (emphasis in original).
 

 Second, the appellants argue that the Louisiana Supreme Court lacks authority to promulgate a rule denying extraterritorial effect to Louisiana law under the Lands Act. The Lands Act, argue appellants, adopts the law of Louisiana as surrogate federal law.
 
 Rodrigue v. Aetna Casualty & Surety Co.,
 
 395 U.S. 352, 365, 89 S.Ct. 1835, 1842, 23 L.Ed.2d 360 (1969). It follows, then, that Louisiana may not thwart this intent by incorporating within its own legal code a rule which denies extension of the Oil Well Liens Act to property situated on the high seas.
 
 Cf. Chevron Oil v. Huson,
 
 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) (state’s choice of law rules denying extraterritorial effect to state’s prescriptive time limitations held not “applicable” in a federal court adjudicating a claim under the Lands Act).
 

 Finally, maintain appellants,
 
 P.H.A.C.
 
 is in conflict with
 
 Continental Casualty Co. v. Associated Pipe & Supply Co.,
 
 447 F.2d 1041 (5th Cir.1971), in which we held that the Oil Well Liens Act is applicable pursuant to the Land Act, to an oil pipeline on the Outer Continental Shelf.
 

 St. Mary takes issue with defendants’ characterization of the
 
 P.H.A.C.
 
 opinion and argues that
 
 P.H.A. C.
 
 does not deny the effect of Louisiana law to the Outer Continental Shelf but, rather, chooses between two mutually exclusive statutory provisions, giving effect to the Private Works Act to the exclusion of the Oil Well Liens Act.
 
 [2]
 

 After giving careful consideration to these competing positions we find that
 
 P.H. A. C.
 
 does not supply the rule of decision in this case.
 
 P.H.A. C.
 
 defined the territorial limits of Louisiana state law, and found that those limits did not extend to the Outer Continental Shelf adjacent to the state of Texas.
 
 P.H.A. C.
 
 denied effect to the Oil Well Liens Act because
 

 [t]he statute seems to contemplate that the lien be on the well, the lease, or property located on the lease. In this ease, the building was ultimately located on a lease, but a lease which is completely outside the state. The statute does not purport to affect producing wells outside the State of Louisiana.
 

 Having ruled out the Oil Well Liens Act, the court gave effect to the Private Works Act because it found that work was performed on an immovable structure while it was still located in Louisiana. Under the Private Works Act the lien attaches on a structure when and where it is built, not where it is ultimately located. As the court of appeals in
 
 P.H.A. C.
 
 explained,
 

 [Sjince the unit (res) was located in St. Mary Parish when the lien affidavits were filed and still there when suits seeking to have the liens and privileges recognized were filed, there can be no question of the court’s jurisdiction over the subject matter. It is well established as a general rule that, where the jurisdiction of the person or of the res has once attached, it is not defeated by the removal of the person or the res beyond the jurisdiction of the court.
 

 P.H.A.C. v. Seaways International, Inc.,
 
 393 So.2d 117, 123-24 (La.Ct.App.1980) (citations omitted),
 
 aff'd,
 
 403 So.2d 1199 (La.1981).
 

 The question posed by
 
 P.H.A.C.
 
 differs from the question in the case before this court.
 
 P.H.A.C.
 
 did not determine which of its two lien statutes, the Oil Well Liens Act or the Private Works Act, applied to immovables located on the Outer Continental Shelf off the coast of Louisiana. It
 
 *813
 
 denied extraterritorial effect to both statutes, applying the Private Works Statute because under its terms, a lien attached to the property in question while it was still located in Louisiana. By contrast, the question we must answer is how best to give effect to the Louisiana lien statutes which are extended under the Lands Act to federal waters off the Louisiana coast. Setting
 
 P.H.A. C.
 
 aside, we direct our attention to deciding what
 
 federal
 
 rights are afforded under the two Louisiana statutes in question.
 

 III.
 

 A. The Oil Well Liens Act
 

 The Oil Well Liens Act, section 9:4861, provides in pertinent part:
 

 Any person who performs any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water, or who performs any labor or service in the operation or in connection with the operation of any oil, gas or water well or wells, or performs any labor or service in the construction, operation, or repair or in connection with the construction, operation, or repair of any flow lines or gathering lines, regardless of their length, which are attached to or connected with the oil, gas or water well or wells, and any pipeline owned by the producer, operator or contract operator of the well, has a privilege on all oil or gas produced from the well or wells, and the proceeds thereof inuring to the working interest therein, and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, pipelines, flow lines, gathering lines and other related equipment, including, but not limited to, monitoring, measuring, metering and control equipment, appurtenances, appliances, equipment, buildings, tanks, and other structures thereto attached or located on the lease, and rights-of-way in the case of a gathering line, flow line or other producer, operator or contract operator owned pipeline for the amount due for labor or service, in principal and interest, and for the cost of preparing and recording the privilege, as well as ten percent attorney’s fees in the event it becomes necessary to employ an attorney to enforce collection.
 

 This statute confers lien privileges to laborers and providers of services whose work was done “in drilling or in connection with the drilling of any well,” or “in the operation of any oil, gas or water well.”
 

 In
 
 P.H.A.C.
 
 the Louisiana Supreme Court determined that an offshore drilling platform living quarters unit “was designed to be used ‘in connection with the operation’ of oil or gas wells” as required by the Oil Well Liens Act, section 9:4861. 408 So.2d at 1202. Because the court went on to hold that the Oil Well Liens Act did not apply to any property located outside of Louisiana, this determination is dictum. We can conceive of no basis, however, for supplanting this ruling with a contrary rule of our own making. We proceed, therefore, on the assumption that work performed by appellants was “in connection with the drilling of any well.”
 

 We next turn our sights to the filing requirements of the Oil Well Liens Act. Section 9:4862 provides in pertinent part:
 

 If a notice of such claim or privilege ... is filed for record and inscribed in the mortgage records of the parish where the property is located within one hundred eighty days after the last day of the performance of the labor or service ... the privileges are superior to all other privileges or mortgages against the property [with some exceptions].
 

 It is clear that the appellants made a filing within the one hundred eighty day filing period. What is not clear, however, is whether a filing was made in the mortgage records of the parish where “the property is located.” Appellants’ filings were made in St. Mary Parish and were proper only if the property was “located” in St. Mary Parish under the terms of section 9:4862. While “in some cases a lien might secure a claim for work performed away from the well or lease,” there is no basis in either
 
 *814
 
 the language of section 9:4861 or in the case law for permitting an encumbrance upon property not “located on” or “attached to” a lease or well.
 
 See P.H.A.C.,
 
 403 So.2d at 1202 (property must be located on lease);
 
 Continental Casualty Co. v. Associated Pipe & Supply Co.,
 
 447 F.2d 1041 (5th Cir.1971) (lien secured where onshore processing plant located in parish where lien filed was attached by a pipeline to the offshore lease);
 
 Louisiana Materials Co., Inc. v. Atlantic Richfield Co.,
 
 486 So.2d 776 (La.Ct.App.),
 
 writ granted,
 
 488 So.2d 1013 (La.1986) (same).
 

 From the foregoing, we conclude that a security interest in property does not attach under the Oil Well Liens Act until it is “located” on a lease or is situated in such a way as to be physically connected to the lease. It .follows then that “location,” as defined by section 9:4862, means location on the leasehold or at a place that is physically linked to the leasehold. Because the living quarters unit was not located on or linked to the leasehold when it was being constructed in St. Mary Parish, the filing in St. Mary Parish did not create a security interest in the unit under the Oil Well Liens Act.
 
 [3]
 
 In so holding, we emphasize that our reasoning does not depend on the Louisiana legislature's intention that the Oil Well Lien’s Act not apply to leases located outside of the state. Our sole basis for decision is the absence of any statutory means of filing when the property at issue is “located” on a lease which is outside of any parish where filing may be effected.
 

 B. The Private Works Act
 

 The Private Works Act differs from the Oil Well Liens Act in two important respects. First, it provides no lien against the proceeds of a mineral lease and thus requires no special physical relationship between the property and a lease. Second, it provides that a lien is to be filed not where property is located but where work is “to be performed.” La.Rev.Stat.Ann. 9:4831 (West 1983).
 

 As “work” was performed in St. Mary Parish it clearly was a proper place for filing. The question is whether it was a proper place for filing for the subsequent work performed on the high seas and whether appellants’ filings in St. Mary Parish were timely.
 

 Section 9:4822 C provides that filing must be made within sixty days after “substantial completion ... of the work.” “Work” is defined in section 9:4807 A as “a single continuous project for the improvement, construction, erection, reconstruction, modification, repair, demolition, or other physical change of an immovable or its component parts.” Section 9:4822 H provides that “[a] work is substantially completed when:
 

 (1) The last work is performed on, or materials are delivered to the site of the immovable ... or
 

 (2) The owner accepts the improvement, possesses or occupies the immovable ... although minor or inconsequential matters remain to be finished or minor defects or errors in the work are to be remedied.
 

 Under the holding of
 
 P.H.A.C.,
 
 an offshore living quarters unit is a “building.” “Buildings,” moreover, are immovables from the moment that construction on them commences. 403 So.2d at 1203-04. Thus, if all other conditions under the statute are met, the Private Works Act applies
 
 *815
 
 to the work performed on the living quarters unit during all phases of its construction and anchorage. The question is whether the construction of the unit in St. Mary Parish and its erection and subsequent work performed in a different location constitute a single “work” or whether they are separate “works.” If they are a single work, section 9:4822 H(2) applies; if they are separate works, section 9:4822 H(l) applies to the construction in St. Mary Parish, and section 9:4822 H(2) applies to final work performed on the unit at its ultimate location on the high seas.
 

 We find that the objectives of the Lands Act are best served by viewing a single continuous project involving work both on land and at sea as a single “work.” Any other view would deny the protection of Louisiana’s lien laws to work performed on the high seas merely because the work was performed in federal territory rather than within a Louisiana parish. The Louisiana legislature clearly intended to invest all laborers and materialmen with the benefits of a statutory lien and to this end provided convenient means by which these liens could be perfected. Through the fortuity of a local rather than central filing scheme, Louisiana’s law is not easily extended to the Outer Continental Shelf. This does not mean, however, that we are faced with an insurmountable barrier in attempting to carry out the intent of the legislature. Clearly, we are without authority to create a materialman’s lien and a filing mechanism for perfecting that lien out of whole cloth. Where the light and means have been created by state legislative authority and extended to the high seas by congressional authority, however, we should construe the applicable statutory language liberally with an eye to fulfilling Congress’ aims. We believe that viewing the project in this case as a single “work” is consistent with our duty to effectuate Congress’ intent on one hand and to give a reasonable construction to the language of the Public Works Act on the other.
 

 Accordingly, we find that St. Mary Parish was a proper place for filing because, in accordance with section 9:4831 work was “performed” there. Further we find that the work was not completed until after the living quarters unit was erected and, as provided for in section 9:4822 H, was “possessed” or “occupied” by the owner. However no determination has been made as to when the unit was possessed or occupied, and on the record before us we are unable to make that determination as a matter of law.
 

 Accordingly, we affirm the order of the district court insofar as it upholds the finding of the bankruptcy court that the Private Works Act applied in this case; however, we vacate the order and remand for findings of fact as to when the living quarters unit was possessed or occupied by McMoran.
 

 AFFIRMED IN PART, VACATED IN PART AND REMANDED.
 

 [1]
 

 . CSI has been paid a part of this amount for work it performed on another project. The balance remaining due on the project at issue in this case is $28,057.81.
 

 [2]
 

 . By the express terms of section 9:4808 application of either the Public Works Act or the Oil Well Liens Act precludes application of the other. Section 9:4808 D provides:
 

 This part [the Private Works Act] does not apply to:
 

 (1) The drilling of any well or wells in search of oil, gas, or water, or other activities in connection with such a well ■ or wells for which a privilege is granted by La.R.S. 9:4861 [the Oil Well Liens Act].
 

 [3]
 

 . In
 
 Continental Casualty, supra,
 
 we held that a lien need not be filed in order to be valid against the owner under the Oil Well Liens Act. If this were the law, the absence of a place for filing would be immaterial if the laborer or materialman sought only an interest which could be enforced against the owner of the property sought to be encumbered. Since our 1971 opinion in
 
 Continental Casualty,
 
 however, Louisiana law has undergone a transformation. It now appears that under Louisiana law no lien exists, even against the owner, in absence of filing.
 
 Louisiana Materials Co. v. Atlantic Richfield Co.,
 
 486 So.2d 776 (La.Ct.App.),
 
 writ granted,
 
 488 So.2d 1013 (La.1986);
 
 C-Craft Marine Services, Inc. v. LLOG Exploration Co.,
 
 470 So.2d 241 (La.Ct.App.),
 
 writ denied,
 
 472 So.2d 921 (La.1985). Whether this state rule of construction is "applicable" under the Lands Act or whether the reasoning of
 
 Continental Casualty
 
 still applies is a matter left to another court.