**GARDES DIRECTIONAL DRILLING**

v.

**U.S. TURNKEY EXPLORATION, INC.**

Civ. A. No. 89–1156–LC.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

June 2, 1995.

Stanley B. Blackstone, Susan C. Severance, Gachassin & Hunter, Lafayette, LA, for Gardes Directional Drilling.

Paul B. David, Broussard David & Daigle, Lafayette, LA, for LAJFP Drilling Ltd.

Patrick W. Gray, Joseph P. Hebert, George Arceneaux, III, Liskow & Lewis, Lafayette, LA, for Kerr McGee Corp., Chevron USA Inc., Phillips Petroleum Co., Sonat Exploration Co., Felmont Oil Corp., Cabot Oil & Gas Corp., Case–Pomeroy Oil Corp.

Skipper M. Drost, Sulphur, LA, Jennifer L. Davis, McGlinchey, Stafford & Long,

Houston, TX, for U.S. Turnkey Exploration Inc.

Thomas C. Patin, Strain, Dennis, Mayhall & Bates, Lafayette, LA, for Baxter Drilling & Exploration Inc.

Samuel Edgar Masur, Gordon, Arata, McCollam & Duplantis, Lafayette, LA, Douglas Frank Pedigo, Omaha, NE, for PSI Inc. of Missouri.

Leonard K. Knapp, Jr., Office of Leonard K. Knapp, Jr., Lake Charles, LA, for Ace Fishing & Rental Tools Inc.

Henry H. McCreight, Jr., Houston, TX, for American Downhole Ltd. Partnership No. 1.

Henry D.H. Olinde, Jr., Baton Rouge, LA, for Western Atlas International Inc.

Nathan A. Levy, Jr., St. Martin & Lirette, Houma, LA, for Coastal Inspection Service Inc.

Victor A. Ashy, Lafayette, LA, for Drilling Measurements Inc.

Brad A. Adams, Sessions & Fishman, New Orleans, LA, for L & L Oil Co.

Carl T. Schultz, Green, Patterson & Schultz, Houston, TX, Patrick Donavon Gallaugher, Jr., Scofield, Gerard, Veron, Hoskins & Sin, for Liquid Drill Inc.

Carl T. Schultz, Green, Patterson & Schultz, Houston, TX, for Milchem Inc., Progress Chemical Sales Co.

Dennis Joseph Vidrine, Briney & Foret, Lafayette, LA, for Oil Field Rental Service Co.

Fanned Seidel, Jr., Lafayette, LA, for Royal Service & Rentals Inc.

### RULING

NAUMAN S. SCOTT, District Judge.

Before the court are Motions for Summary Judgment against plaintiffs, Gardes Directional Drilling ("Gardes"), LAJFP Drilling, Ltd. ("LAJFP") and Marine Transportation Services, Inc. ("Marine"), filed on behalf of defendants, Kerr–McGee Corporation, Chevron U.S.A. Inc., Phillips Petroleum Company, SONAT Exploration Company, Felmont Oil Corporation, Cabot Oil & Gas Corporation, and Case–Pomeroy Oil Corporation (collectively "Owners"), pursuant to Fed.R.Civ.P. 56. Also under consideration is a Motion for Partial Summary Judgment against Owners filed on behalf of Marine.

## I. Factual Background

In 1977, the United States Department of the Interior, Minerals Management Service ("MMS"), granted the Owners an oil, gas and mineral lease over East Cameron Block 34 ("Block 34"), located on the Outer Continental Shelf off the southwest coast of Louisiana. Production from the lease of Block 34 began diminishing in the late 1980's. In response, in 1988, the Owners entered into a farmout agreement which transferred all lease operations to Senior G & A Operating Company ("Senior"). In turn, Senior contracted with U.S. Turnkey Exploration to drill a well on the lease. U.S. Turnkey contracted with LAJFP to provide a drilling vessel and with several others (including Gardes and Marine) to provide services in connection with those drilling activities.

The well was unsuccessful and U.S. Turnkey did not pay Gardes, LAJFP, Marine, and many of the other service providers. Senior had gone into bankruptcy, so in June 1989, they filed liens against other property associated with the lease in accordance with Louisiana law, L.R.S. 9:4861(A). The lease between MMS and the Owners, however, had expired and there was no production against which these liens might attach. The only properties against which they could attach were certain structures and appurtenances ("lien property") located at Block 34 that were owned by Kerr–McGee and the other Owners.

Over three years after the expiration of the lease and two years after the filing of the liens, MMS ordered the Block 34 Owners to remove the property and equipment under lien. The validity of this order was not contested. In June 1991, pursuant to that order, the Owners contracted with Teledyne Movable Offshore ("Teledyne") to remove the lien property from Block 34. Teledyne later dismantled and salvaged the subject property.

The Block 34 Owners contend that they were legally obliged to carry out the order of MMS and that the value of the property and equipment in place had a nominal net value, certainly nothing more than the nominal net salvage value received from Teledyne. On the contrary, the leading claimants contend that the property and equipment under lien and in place was worth millions of dollars. If this is true, we are at a loss to understand why the lien holders did not seize and dispose of the property and equipment during the two years following the filing of their lien along with the other measures they undertook and successfully recovered some other money owed to them by U.S. Turnkey.

## II.  Law and Analysis

The lien property and the mineral lease were located on the Outer Continental Shelf off the coast of Cameron Parish, Louisiana.

Accordingly, we look to the provisions of federal Outer Continental Shelf Lands Act ("OCSLA") which provides in pertinent part:

> (1) The Constitution and laws and civil and political jurisdiction of the United States are hereby extended to the subsoil and seabed of the Outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources there from ... to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a state ...

> (2)(A) To the extent they are applicable and not inconsistent with this sub-chapter or with other federal laws and regulations ... the civil laws of each adjacent state, now in effect and hereinafter adopted ... are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the Outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its bound-

aries were extended seaward to the outer margin of the outer Continental Shelf ... 43 U.S.C. Sec. 1333(a).

Pursuant to the above provisions, we incorporate the Louisiana Oil, Gas, and Water Well Lien Act[1] ("Lien Act") as surrogate federal law under OCSLA which provides in pertinent part:

> [A]ny person who performs any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water ... has a privilege on all oil and gas produced from the well or wells ... and in all drilling rigs, standard rigs, machinery, pipelines, flow lines, gathering lines and other related equipment, including, but not limited to monitoring, measuring, metering and control equipment, buildings, tanks, and other structures thereto attached or located on the lease ...

L.R.S. 9:4861(A).

■ The Owners have asserted that maritime law is applicable to this case and not the Lien Act. We disagree. Even if the activities undertaken by plaintiffs involved a maritime contract, they fall squarely within the scope of OCSLA. Such activities were conducted pursuant to drilling operations on the seabed and into the subsoil of the Outer Continental Shelf. Furthermore, the Fifth Circuit has ruled that the Lien Act through OCSLA is applicable even though a maritime contract is involved. *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir.1990). Jurisprudence in the Fifth Circuit also has recognized that a driller's lien attaches to all property listed in the Lien Act regardless of who owns that property and that a contractual relationship between the "furnisher of the materials" and the owners of the lease is not required. *JHJ, Ltd. I v. Chevron U.S.A., Inc.*, 580 F.Supp. 6, 8 (M.D.La.1983), *aff'd* 806 F.2d 82 (5th Cir.1986). Accordingly, contrary to defendant's contention, the Lien Act is applicable and covers the services provided by LAJFP and Gardes and lien rights thereto in connection to the operation of the lease on

---

1. The Fifth Circuit has held that there is no federal law that is inconsistent with the Louisiana Oil, Gas and Water Well Lien Act. *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043 (5th Cir.1990).

East Cameron Block 34 which they seek to enforce in this court.

█ Under the Lien Act, it is unlawful for any person to remove property subject to a lien or cause the property to be removed from the premises where located or otherwise dispose of the property without written consent of the lienholder. L.R.S. 9:4861.2(A). However, the remedy for unlawful removal and/or disposal of property subject to this Louisiana law is limited to *in rem* liability, therefore, the Act cannot support a claim for damages *in personam*. In *Genina Marine Services, Inc. v. Arco Oil & Gas Co.*, 552 So.2d 1005, 1008 (La.App. Cir. 1989), *writ denied* 556 So.2d 1281 (1990), the Louisiana First Circuit Court of Appeal stated:

> The Oil Well Lien Act does not create any personal obligations. The act grants a privilege over certain property to certain people. Nowhere in the act is there any mention of a personal obligation. In interpreting statutes granting liens and privileges, courts generally construe the statutes strictly against the claimant. *P.H.A.C. Services, Inc. v. Seaways International, Inc.*, 403 So.2d 1199, 1202 (La. 1981). Following the jurisprudential rule we find the trial judge was correct in determining that there is no personal liability on the part of ARCO and the lien creates only an in rem liability which is not dependent on the owners of the liened property.

█ We agree with the First Circuit that the Louisiana Oil, Gas, and Water Well Lien Act clearly does not impose personal liability on the East Cameron 34 Owners. The plaintiffs' entire case is premised on the basis of a Louisiana statutory lien. The only reason plaintiffs are attempting to enforce this lien at sea is because OCSLA allows Louisiana law to be extended out to sea. If the lien property were situated on Louisiana soil, clearly, plaintiffs' remedy would lie *in rem* and they would have sequestered the lien property to enforce their rights. Consequently, it does not seem logical that Louisiana law can be extended out to sea and then changed from an *in rem* remedy to a personal damages remedy.

Furthermore, § 4861.2 of the Lien Act specifically provides that the remedy for unlawful removal and disposal of liened property is the right to seize the disputed property without bond. While the plaintiffs dispute that they were properly notified that the property had, in fact, been removed and, thus, they were unable to assert their right of sequestration without posting bond, we believe that the plaintiffs had adequate notice. In fact, the plaintiffs were apprised for a period of years that the MMS had ordered removal of the lien property from East Cameron Block 34. We believe that if the plaintiffs had wished to preserve their rights under the Lien Act, they would have acted long before the MMS' deadline for removal of the property threatened expiration. They failed to do so. Therefore, the plaintiffs are not now entitled to a cause of action for damages against the Owners when they failed to act and had an abundance of time to do so.

Accordingly, the Motions for Summary Judgment against LAJFP Drilling, Ltd., Gardes Directional Drilling and Marine Transportation Services, Inc., filed on behalf of defendants, Kerr–McGee Corporation, Chevron U.S.A. Inc., Phillips Petroleum Company, SONAT Exploration Company, Felmont Oil Corporation, Cabot Oil & Gas Corporation, and Case–Pomeroy Oil Corporation, are hereby **GRANTED**. Marine Transportation Services, Inc.'s Motion for Partial Summary Judgment against Kerr–McGee Corporation, Chevron U.S.A., Inc., Phillips Petroleum Company, SONAT Exploration Company, Felmont Oil Corporation, Cabot Oil & Gas Corporation, and Case–Pomeroy Corporation is hereby **DENIED**.