960 So.2d 202 (2007)
Cynthia BRIDGES, Secretary, Department of Revenue, State of Louisiana
v.
NATIONAL FINANCIAL SYSTEMS, INC.
No. 2006 CA 0957.
Court of Appeal of Louisiana, First Circuit.
March 23, 2007.
Rehearing Denied June 28, 2007.
*203 Frederick Mulhearn, Baton Rouge, Counsel for Plaintiff/Appellee Cynthia Bridges, Secretary, Louisiana Department of Revenue.
Stan P. Baudin, Plaquemine, Counsel for Defendant/Appellant National Financial Systems, Inc.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
McCLENDON, J.
This is an appeal of a partial summary judgment in which the trial court determined that modular banking units are corporeal movables and, therefore, the leases of such structures are taxable transactions. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
The facts of this matter are not in dispute. The defendant, National Financial Systems, Inc. (NFS), is a non-Louisiana corporation, licensed to do business in the State of Louisiana. It is in the business of leasing modular banking units to banks and federally insured financial institutions desiring to open branch locations in rural and urban areas of Louisiana. The Louisiana Department of Revenue (Department) conducted a sales and use tax compliance audit of NFS's books and records, which revealed that during the period from January 1, 1998, through December 31, 2000, NFS received $165,132.68 in lease payments on its units that were used in Louisiana, and that NFS neither collected nor remitted any taxes on these leases.
As a result of the audit, Cynthia Bridges, Secretary of the Department of Revenue, State of Louisiana (the State) instituted the present action against NFS to collect the lease taxes, asserting that NFS is indebted to the State for the tax period January 1, 1998, through December 31, 2000, in the amount of $24,605.31 in taxes, $6,151.34 in delinquent penalties, plus applicable interest. NFS answered the petition, generally denying its allegations and asserting that no taxes were due. NFS alleged that the State incorrectly classified the structures as "tangible personal property" and, therefore, incorrectly claimed the leases of such structures were subject to a lease tax.[1]
Thereafter, on January 3, 2005, the State moved for summary judgment, asserting that it was entitled to judgment as a matter of law for the lease taxes. Following a hearing, on November 14, 2005, *204 the trial court granted partial summary judgment in favor of the State, having determined that the lease transactions at issue were taxable.[2] The trial court, finding no just reason for delay, designated the judgment as a final judgment. Judgment to this effect was signed on December 15, 2005. Following the denial of its motion for a new trial, NFS appealed.[3]

APPELLATE JURISDICTION
Initially, we must address whether the partial summary judgment was properly designated as final for purposes of this appeal.
A judgment that determines the merits in whole or in part is a final judgment. LSA-C.C.P. art. 1841. Whether a partial final judgment is appealable is determined by examining the requirements of LSA-C.C.P. art.1915. Louisiana Code of Civil Procedure article 1915(B)(1) provides that when a court renders a partial summary judgment as to "one or more but less than all of the claims, demands, issues, or theories" presented in an action, that judgment is not final for the purpose of an immediate appeal "unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay." This provision "attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." R.J. Messinger, Inc. v. Rosenblum, 04-1664, p. 13 (La.3/2/05), 894 So.2d 1113, 1122.
Because the trial court's judgment in this matter, certifying the judgment as final, did not provide explicit reasons for such certification, we are required to determine de novo whether the certification was proper. R.J. Messinger, 04-1664 at pp. 13-14, 894 So.2d at 1122. In conducting this review, we consider the "overriding inquiry" of "whether there is no just reason for delay," as well as the other non-exclusive criteria trial courts should use in making the determination of whether certification is appropriate:
(1) The relationship between the adjudicated and the unadjudicated claims;
(2) The possibility that the need for review might or might not be mooted by future developments in the trial court;
(3) The possibility that the reviewing court might be obliged to consider the same issue a second time; and
(4) Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.
R.J. Messinger, 04-1664 at pp. 13-14, 894 So.2d at 1122.
Considering the above factors, we conclude that the trial court's certification of the judgment for appeal was proper. The partial summary judgment at issue determined that the modular banking units were taxable as leased property in Louisiana. The adjudicated and unadjudicated claims are separate and distinct issues. If the taxability of the lease transactions is upheld on appeal, the only remaining issue is the amount of the tax owed. If we find that the lease transactions are not subject to the lease tax, this lawsuit will be resolved. There are no overlapping issues and no need to review the taxation issue again. Miscellaneous factors also favor this appeal. Accordingly, the partial summary *205 judgment constitutes a final judgment for purposes of appeal.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with supporting affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
NFS contends that the trial court erred in finding that the modular banking units are "tangible personal property" for purposes of lease taxes. NFS contends that the "buildings" are immovable during the lease period and, therefore, such leases are exempt from the Louisiana lease tax. On the other hand, the Department asserts that NFS and its bank customers contracted, in clear and unambiguous terms, that the modular banking units would remain movable property, and that the structures are in fact movable property, with such leases being subject to the lease tax.
Louisiana law imposes a tax upon the lease or rental within the state of tangible personal property. LSA-R.S. 47:302(B).[4] According to LSA-47:301(16)(a), "`[t]angible personal property' means and includes personal property which may be seen, weighed, measured, felt or touched, or is in any other manner perceptible to the senses."
"Tangible personal property" is a common law term, but Louisiana courts have found it synonymous with the Civil Code concept of "corporeal movable property." South Central Bell Telephone Co. v. Barthelemy, 94-0499 (La.10/17/94), 643 So.2d 1240, 1243; City of New Orleans v. Baumer Foods, Inc., 532 So.2d 1381, 1383 (La. 1988).[5] As was explained in the South Central Bell decision:
The application of property law concepts in this tax context is an exception to the general rule that tax laws are sui generis. . . . The reasoning behind applying property concepts in such a tax context is that the use of the common law term "tangible personal property" by the legislature, or by the various political subdivisions, was not intended to import the common law into Louisiana for purposes of sales and use tax law, nor to require the development of *206 an entirely new body of property law for sales and use tax purposes only, but rather, the term was intended to be interpreted consistently with our civilian property concepts embodied in the Civil Code.
The parties agree that the lease tax applies if modular banking units are movable property, but that leases involving the modular banking units are exempt from taxation if the structures are immovable property. Accordingly, resolution of the taxation issue in this matter depends on the classification of the structures, as set forth in the Civil Code. Thus, our analysis must begin with a review of pertinent Civil Code articles governing movable and immovable property, as follows:
Art. 462. Tracts of Land
Tracts of land, with their component parts, are immovables.
Art. 464. Buildings and standing timber as separate immovables
Buildings and standing timber are separate immovables when they belong to a person other than the owner of the ground.[6]
Art. 471. Corporeal movables
Corporeal movables are things, whether animate or inanimate, that normally move or can be moved from one place to another.
Art. 475. Things not immovable
All things, corporeal or incorporeal, that the law does not consider as immovables, are movables.
NFS has consistently argued that the modular banking units, when in place and when lease payments are being received by NFS, are buildings, and thus are separate immovables under Civil Code article 464.[7] The Department contends that these structures were built to be moved, were movables according to the lease terms, and clearly are movable property.
In support of its motion for summary judgment, the Department offered NFS's responses to the Department's discovery, as well as examples of lease agreements between NFS and banking institutions. NFS also offered discovery responses by the Department, together with the deposition testimony of Mr. Raymond Tangney, the Department's senior sales tax policy consultant, and the affidavit of NFS's president and CEO, Don G. Gordon.
The Department has pointed to language in the lease agreements that the modular banking units are "portable" and "temporary in nature" in support of its argument that the structures are movable property. NFS asserts that whether or not the structures were intended to be moved, or could be moved and transported, is irrelevant, because the structures are "buildings" and, therefore, separate immovables under the Civil Code, making leases of them exempt from taxation.
*207 Although our supreme court has not specifically addressed the issue before us, it has made several observations as to what constitutes a "building" for the purpose of imposing delictual responsibility upon the owner under LSA-C.C. art. 2322. An inherent requirement is that there be a structure of some permanence. Olsen v. Shell Oil Co., 365 So.2d 1285, 1289 (La. 1978); Mudd v. Travelers Indemnity Co., 309 So.2d 297, 300-01 (La.1975). In the context of the Louisiana Civil Code, a "building" is a type of permanent construction that would be classified as an immovable. Olsen, 365 So.2d at 1290.
In this matter, Mr. Gordon stated the following in his affidavit, in part:
[T]he modular bank buildings range in size from 14 feet wide by 70 feet long, to 28 feet wide by 70 feet long, and weigh several tons. The buildings are built on steel frames to support the additional weight of bank equipment (i.e.: safes, depositories, automatic teller machines, and vaults). Each building has one drive-up teller window which also includes access to a night depository and, if requested by the bank, an automatic teller machine. In most cases an architect or state certified engineer is hired by the bank to ensure structural integrity of the building, proper drainage, and compliance with all local, state, and national building codes.
The building is placed upon a concrete slab foundation at least five (5) inches thick. The building is attached to the slab with tow plate, tie down strap, or hurricane strap, and connected to the slab with an expansion bolt. Concrete curbing is then poured at the drive-up window and for any additional drive-up windows the bank has requested. A canopy over all drive-up windows is built to connect to the building and to attach to the concrete islands of each drive-up lane. A vestibule over the front door is also constructed on site as well as an ADA ramp. The utilities are connected by plumbers, electricians, and telephone technicians.
Before a building can be removed upon termination of the lease period, the canopy over the drive-up lanes, the vestibule, and the ADA ramp must be removed. The concrete curbing, islands for the additional drive-up lanes, and support posts for the drive-up canopies must be removed. This includes jackhammering out those items which are concrete. The plumbing, water, and sewer are disconnected by a plumber, electricians disconnect the power, and landscaping is stripped away. The moving crew must lift the building with hydraulic jacks, place wheels, axles, and tongue under the building, and a tractor will pull the building from the slab.
Mr. Gordon further stated that the terms of the leases are typically one to two years. The lease examples reflect that in addition to the monthly rental amount and the security deposit, NFS also charged a transportation fee, setup fee, and a removal fee. Further, upon termination of the leases, NFS agreed to remove the modular banking unit within thirty days. NFS also admitted that upon termination of a lease and the return of the modular banking unit, NFS would attempt to lease the modular banking unit to another client.
The trial court determined that the modular banking units were movables according to the terms of the lease contracts. We agree with the trial court that the modular banking units are movables. However, we disagree with the reasoning of the trial court. Although NFS and its customers may have contracted between themselves that the property would remain movable (i.e., for purposes of ownership, security interests, etc.), that *208 designation does not answer the question of whether the modular banking units are movable for tax purposes. The Department was not a party to the lease transactions at issue. The trial court erred in looking only at the contracts between NFS and its customers to conclude that the structures are movables. In the context of this tax dispute, contractual agreements cannot dictate the classification of a thing under the Civil Code. However, because we review summary judgments de novo, we reach the same result, based upon the determination that these structures are movables under the Civil Code property articles.
Although arguably the structures at issue herein have some degree of permanency once they are set in place, they are not permanent, nor are they intended to be permanent. Rather, they are designed and intended to be used for a specified period of time and then moved, and they are moved. The normal and intended use of these modular banking units is to be moved from one place to another. They are used as temporary units until a permanent structure can be put into place.
We find the present case to be distinguishable from P.H.A.C. Services, Inc. v. Seaways International, Inc., 403 So.2d 1199 (La.1981), cited by NFS. In the P.H.A.C. decision, the supreme court determined that a three-story high permanent steel structure, designed to house offshore oil workers, qualified as a building and therefore, was an immovable for purposes of the Private Works Act, LSA-R.S. 9:4801, et seq. In P.H.A.C., although the structure was built at a construction site and then moved offshore, it was designed to be permanent. P.H.A.C., 403 So.2d at 1203-04. In this matter, when moved onto a leased site, the modular banking units are not meant to stay at that location permanently, but only for the term of the lease.
We also do not find the facts before us analogous to those in Graffagnino v. Lifestyles, Inc., 402 So.2d 742 (La.App. 4 Cir. 1981), wherein the ownership of a structure called an O'Dome was at issue. The modular banking units herein are designed to be moved without losing their identity, whereas the O'Dome in Graffagnino had to be disassembled in order to be moved. Graffagnino, 402 So.2d at 744.
Accordingly, we determine that the modular banking units at issue herein are corporeal movables "that normally move or can be moved from one place to another." LSA-C.C. art. 471. As such, they are tangible personal property, and the lease of this property in Louisiana subjects the lease to taxation under LSA-R.S. 47:302(B).

CONCLUSION
For the foregoing reasons, the partial summary judgment in favor of Cynthia Bridges, Secretary of the Department of Revenue, State of Louisiana, determining that the lease transactions at issue in this matter are taxable, pursuant to LSA-R.S. 47:302(B) and related statutes, is affirmed. Costs of this appeal are assessed against National Financial Services, Inc.
AFFIRMED.
NOTES
[1] Throughout these proceedings, NFS has referred to these structures as "buildings" and uses the term "modular building" in its leases. The Department, however, has refused to characterize these banking structures as "buildings." For the purposes of this opinion, we shall refer to these structures as "modular banking units."
[2] The summary judgment was partial, in that the trial court determined the taxability of the transactions, but not the amount of the taxes due.
[3] We note that NFS has appealed the denial of its motion for new trial. However, NFS has also appealed the summary judgment, seeking a review on the merits.
[4] Louisiana Revised Statute 47:302(B) provides, in pertinent part: "There is hereby levied a tax upon the lease or rental within this state of each item or article of tangible personal property, as defined herein. . . ." See also LSA-R.S. 47:321(B); LSA-R.S. 47:331(B); LSA-R.S. 51:1286.
[5] Although the South Central Bell and City of New Orleans cases involved city use taxes, this court has addressed this issue in the context of LSA-R.S. 47:301, in Exxon Corp. v. Traigle, 353 So.2d 314, 316-17 (La.App. 1 Cir.1977), writ denied, 354 So.2d 1385 (La.1978):

In its use of this common law term [tangible personal property] we do not believe the legislature intended to import the common law into Louisiana for the purpose of sales tax law or to require the court to develop a new body of property law for the purpose of the sales tax. We find it more likely that the legislature desired this undefined term to be defined in accordance with the general property law of Louisiana. . . . Therefore we find it only natural to assume that despite using common law terminology, the legislature intended that Louisiana property law be applied to give explanation to Louisiana tax law.
[6] Revision Comment (d) to Civil Code article 464 provides:

Constructions permanently attached to the ground, other than buildings, are component parts of a tract of land when they belong to the owner of the ground. . . . They are movables when they belong to another person. Article 464, following Louisiana legislation and jurisprudence, declares that only buildings and standing timber may be separate immovables.
[7] NFS contends that the timing of the receipt of the lease payments is critical in this matter. The lease agreements provide that the monthly rental payments begin on the date that the lessee requests that the modular banking units be delivered on site. Thus, NFS argues, at all times during the lease, when lease payments were received by NFS, the structures were set up and "permanently" attached to the land at their particular location.