**GLEASON v. TWIN CITIES DRILLING CO., Inc.**

**No. 5668.**

Court of Appeal of Louisiana. Second Circuit.

June 30, 1938.

Rehearing Denied July 15, 1938.

Albert P. Garland and J. Bennett Johnston, both of Shreveport, for appellant.

Cawthorn, Golsan & Tooke, of Mansfield, for appellee.

HAMITER, Judge.

Plaintiff seeks judgment in this cause for services claimed to have been rendered by him to defendant in connection with the drilling of a well in search of oil and gas on the Garland property situated in De-Soto Parish, Louisiana. The amount demanded is $470. He avers the existence of a lien and privilege on the well and lease, and on all machinery, equipment, etc., thereto attached, to secure the payment of the claim. Under appropriate allegations, and as prayed for, he obtained the issuance of a writ of provisional seizure, and the aforementioned property was seized. Answering, defendant denies that it owes plaintiff any amount and that he has a lien on said property, and prays for the dismissal of the suit at his cost.

The trial court awarded judgment in plaintiff's favor for $300 and ordered recognition of the alleged lien and privilege and maintenance of the writ of provisional seizure on the seized property.

Defendant appealed suspensively. An answer to the appeal has been filed in which plaintiff prays that the judgment be amended by increasing the amount allowed to $470, and, as amended, that it be affirmed.

The issue as to the amount due plaintiff, if any, involves a question of fact, and the material evidence relating thereto is extremely conflicting. We do not purpose to burden this opinion with a detailed discussion of that evidence, for no benefit to anyone would flow therefrom. It will be treated only generally.

Plaintiff is an oil well driller by occupation. He was employed primarily in that capacity in the search for oil or gas on the Garland property in DeSoto Parish, Louisiana. It is his testimony, and he is supported in many respects by other witnesses, that actual drilling operations were conducted on the named project from November, 1936, until April 2, 1937, and that on the latter date the drilling ceased and the drill pipe was dismantled. The following day the well was plugged with twenty-five sacks of cement. Thereafter, the rig was partially taken apart, an inventory of all property was made and some pipe and other materials were moved from the premises. All of that work was completed on April 5, 1937. The shut-down activities were performed for the purpose of providing the impression that the well was being permanently abandoned and thereby

cause the landowners in the vicinity to grant extensions on leases which defendant held. He was then employed to look after the drilling rig and to scout two wells that were being drilled in somewhat close proximity to defendant's holdings and in which it was interested, and he performed this employment. One of these was the Hunter well located six or seven miles away, and the other was known as the Stebbinger well which was more distant. It was defendant's plan to drill deeper if success attended the two named ventures. Prior to February, 1937, his wages were $12.50 per day, while thereafter his daily pay was $10. He was not notified of his discharge from defendant's employ until May 11, 1937. There was due and unpaid to him for services rendered, $87.50 for December, 1936, $82.50 for January, 1937, and $300 for April and May of 1937. The total amount earned during the two last mentioned months was $400, this being for 30 days in April and 10 days in May at the rate of $10 per day, while he was paid $50 of that amount on or about April 10, 1937, and another $50 on May 6, 1937.

The testimony offered by the defendant's witnesses is to the effect that plaintiff's employment terminated on April 5, 1937, when the work at its well ceased, and that the $50 paid him on or about April 10, was in full and final settlement of all wages that he had previously earned. He was not employed to scout the Hunter and Stebbinger operations, as claimed, nor was he instructed to look after its drilling rig because two other persons had been hired for that purpose. The $50 payment made to him on May 6, 1937, was in the nature of a contribution and was a reimbursement for expenses incurred by him in visiting the two wells.

Defendant's witnesses further testified that plaintiff made reports on his alleged scouting work, but they claim that this was done with the view of his selling leases and mineral rights and earning commissions for himself. Also, they state that extensions of their leases until August 1, 1937, were obtained, and that their rig was moved from the Garland property in July of that year after the Hunter project had failed.

■ The trial court rejected plaintiff's demand of $170 for the alleged unpaid wages of December, 1936, and January, 1937, and permitted recovery on his $300 scouting claim. We are unable to conclude that manifest error has been committed in that decision, which is based entirely on a factual finding from the conflicting evidence adduced, and according to the well settled jurisprudence of this state it should not be disturbed by us.

■■ It is our opinion, however, that no lien and privilege on the well, lease, equipment, etc., secures the payment of the indebtedness. The statute of this state presently in force and effect which provides security for wages earned in well drilling operations is Act 145 of 1934. Under this a lien is granted to any person who "shall perform any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water". Section 1. Statutes creating liens are in derogation of common rights and must be strictly construed, and unless the claimed privilege rights are therein specifically provided for they will not be recognized. Morehouse Lumber & Building Material Co. v. Jacob & Walker, La. App., 144 So. 190. The scouting of other oil wells is not referred to in the statute, and we think that services for such are not contemplated in the phrase "in drilling or in connection with the drilling" as plaintiff contends. The quoted verbiage, as we construe it, has reference to services performed in connection with the actual drilling operations, and not to those remotely connected with the oil and gas venture as was plaintiff's. His claim arose after the well had been temporarily abandoned, and his efforts were given solely for the purpose of determining whether or not deepening of the hole was advisable.

■ Defendant contends that no personal judgment can be rendered against it for the reason that its domicile is in Caddo Parish, Louisiana, while the suit was instituted in DeSoto Parish. Whatever rights defendant had to raise this jurisdictional issue have been waived by a pleading to the merits without urging the proper exception.

"If one be cited before a judge whose jurisdiction does not extend to the place of his domicile, or of his usual residence, but who is competent to decide the cause brought before him, and he plead to the merit, instead of declining the jurisdiction, the judgment given shall be valid, except the defendant be a minor." Code of Practice, article 93.

Accordingly, it is ordered that the judgment is reversed and set aside in so far as it recognizes the asserted lien and privilege and maintains the writ of provisional seizure, and such writ of provisional seizure is dissolved at plaintiff's cost. In all other respects the judgment is affirmed. Plaintiff shall pay the costs of this appeal.