ON PETITION FOR REHEARING
 

 (802 F.2d 809, 5th Cir.1986, October 17, 1986)
 

 Before GEE, REAYLEY, and HILL, Circuit Judges.
 

 PER CURIAM:
 

 In our original opinion in this case, reported at 802 F.2d 809, we held that the Louisiana Private Works Act rather than the Louisiana Oil Well Liens Act governed the perfection of a materialman’s or laborer’s lien against an immovable structure located in United States territorial waters adjacent to the state of Louisiana. Our decision that the Oil Well Liens Act did not apply was based on the fact that a filing was necessary under Louisiana law in order to have a valid lien under the Oil Well Liens Act and that there is no statutory means of filing available when the property at issue is located on a lease outside of any parish. We rested our determination that a filing was necessary on two Louisiana cases:
 
 Louisiana Materials Co. v. Atlantic Richfield Co.,
 
 486 So.2d 776 (La.Ct.App. 1986), and
 
 C-Craft Marine Services, Inc. v. LLOG Exploration Co.,
 
 470 So.2d 241 (La.Ct.App.),
 
 writ denied,
 
 472 So.2d 921 (La.1985).
 

 In
 
 Louisiana Materials Co., Inc. v. Atlantic Richfield Co.,
 
 493 So.2d 1141 (La.1986), the Louisiana Supreme Court reversed the Court of Appeals and overruled
 
 C-Craft.
 
 Contrary to the statement in our original opinion, the court held that a lien granted by the Oil Well Liens Act is effective even if it is not filed within the specified time period. 493 So.2d at 1143. In light of the Louisiana Supreme Court’s decision in
 
 Louisiana Materials,
 
 we GRANT appellant Coburn’s petition for rehearing, withdraw our prior opinion, and substitute the following opinion in its place:
 

 At issue in this appeal is whether the Louisiana Oil Well Liens Act, La.Rev.Stat. Ann. §§ 9:4861-4867 (West 1983), or the Louisiana Private Works Act, La.Rev.Stat. Ann. §§ 9:4801-4855 (West 1983), governs the perfection of a materialman’s or laborer’s lien against an immovable structure located in United States territorial waters adjacent to the state of Louisiana. The bankruptcy court decided that the Private Works Act applies and the district court upheld this decision. In light of a recent decision by the Louisiana Supreme Court, we reverse.
 

 I.
 

 This controversy arises out of the bankruptcy of St. Mary Iron Works, Inc. (St. Mary) who was the general contractor in a project to construct a three-story offshore crew living quarters unit for McMoran Offshore Exploration Company (McMoran). In connection with this construction contract, St. Mary purchased certain building materials from Coburn Co. of Lafayette, Inc., (Cobum) and subcontracted the major electrical work to Control Systematologists, Inc. (CSI). The living quarters unit was built on blocks at a construction site in St. Mary Parish, Louisiana, and then transported on October 12, 1984, to a location on the Outer Continental Shelf (outside the territorial waters of Louisiana but adjacent to its coast) where it was attached to an offshore drilling platform. Following the anchoring of the unit, St. Mary submitted change orders to CSI. An invoice dated
 
 *1132
 
 November 14, 1984, reflects that CSI performed work on the anchored unit in the amount of $5,120.84.
 

 St. Mary filed Chapter 11 bankruptcy proceedings on December 17,1984, and listed appellants CSI and Coburn as unsecured creditors. Three days afterwards, on December 20, CSI duly filed a labor and mate-rialman’s lien for $60,648.66
 
 [1]
 
 against St. Mary and McMoran in St. Mary Parish. Coburn likewise filed its lien for $5,953.22 in St. Mary Parish on January 11, 1985; Coburn also filed its lien in Terrebonne Parish on February 20, 1985. Thereafter, CSI and Coburn filed proofs of claim in the bankruptcy proceedings alleging that they were secured creditors by virtue of their statutory liens.
 

 In order to establish appellants’ status as unsecured creditors, St. Mary initiated an adversary proceeding in bankruptcy court against CSI, Coburn, and other claimants. St. Mary’s position was that the 60-day filing period provided for in the Private Works Act barred appellants’ liens filed sixty-nine and ninety-one days after substantial completion of the project. CSI and Coburn both argued that the Oil Well Liens Act, allowing one hundred eighty days to file, applied. They both argued alternatively that if the sixty-day filing period provided for in the Private Works Act applied, this filing period did not begin to run until November 14 when work was performed pursuant to St. Mary’s change order.
 

 The bankruptcy court found that the Private Works Act, rather than the Oil Well Liens Act, applied and that the sixty-day filing period provided by that statute commenced on October 12, 1984, the date when the living quarters unit was “loaded out” and moved to its permanent location on the Outer Continental Shelf. CSI and Coburn perfected a timely appeal to the district court which upheld the decision of the bankruptcy court. Subsequently, CSI and Coburn timely perfected their appeals in this court.
 

 II.
 

 Louisiana law is made applicable to the instant lien controversy by the Outer Continental Shelf Lands Act (the Lands Act), 43 U.S.C. § 1333, which in pertinent part reads as follows:
 

 To the extent that they are applicable and not inconsistent with this Act or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the Outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the Outer Continental Shelf....
 

 The bankruptcy and district courts in finding that the Private Works Act rather than the Oil Well Liens Act applied based their decisions on an opinion by the Louisiana Supreme Court,
 
 P.H.A.C. Services, Inc. v. Seaways International, Inc.,
 
 403 So.2d 1199 (La.1981). That case, like the one before us, involved a materialman’s lien on a living quarters unit constructed in St. Mary Parish and transported to the Outer Continental Shelf.
 
 P.H.A.C.
 
 held that the Oil Well Liens Act “does not purport to affect producing wells outside the State of Louisiana” and that it was not designed “to govern the case where production equipment is constructed for use completely out of this state and on the high seas.” 403 So.2d at 1202.
 

 Appellants Coburn and CSI seek to avoid this holding on two grounds. First, they maintain that
 
 P.H.A.C.
 
 is distinguishable from the instant case by virtue of the fact that the living quarters unit in
 
 P.H.A.C.,
 
 while built in Louisiana, was transported to a location adjacent to the state of Texas. Appellants contend that under the Lands
 
 *1133
 
 Act, Texas law rather than Louisiana law applied and that
 
 P.H.A.C.
 
 should be limited to cases involving oil leases located off the coasts of states other than Louisiana. This position is concurred in by a Louisiana court of appeals which, in
 
 Louisiana Materials Co., Inc. v. Atlantic Richfield Co.,
 
 486 So.2d 776, 778 (La.Ct.App.),
 
 rev’d on other grounds,
 
 493 So.2d 1141 (La.1986), held that
 

 [t]he property in question in
 
 P.H.A.C.
 
 was located off the
 
 Texas
 
 coast, and, therefore, would not be subject to any Louisiana law. Any attachment of property in that case should have been accomplished by means of Texas law.
 

 We conclude that the [Oil] Well Liens Act is applicable to that property located on the Outer Continental Shelf off the Louisiana coast pursuant to 43 U.S.C. § 1333(a)(2)(A).
 

 (emphasis in original).
 

 Second, the appellants argue that the Louisiana Supreme Court lacks authority to promulgate a rule denying extraterritorial effect to Louisiana law under the Lands Act. The Lands Act, argue appellants, adopts the law of Louisiana as surrogate federal law.
 
 Rodrigue v. Aetna Casualty & Surety Co.,
 
 395 U.S. 352, 365, 89 S.Ct. 1835, 1842, 23 L.Ed.2d 360 (1969). It follows, then, that Louisiana may not thwart this intent by incorporating within its own legal code a rule which denies extension of the Oil Well Liens Act to property situated on the high seas.
 
 Cf. Chevron Oil v. Huson,
 
 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) (state’s choice of law rules denying extraterritorial effect to state’s prescriptive time limitations held not “applicable” in a federal court adjudicating a claim under the Lands Act).
 

 Finally, maintain appellants,
 
 P.H.A.C.
 
 is in conflict with
 
 Continental Casualty Co. v. Associated Pipe & Supply Co.,
 
 447 F.2d 1041 (5th Cir.1971), in which we held that the Oil Well Liens Act is applicable, pursuant to the Land Act, to an oil pipeline on the Outer Continental Shelf.
 

 St. Mary takes issue with defendants’ characterization of the
 
 P.H.A.C.
 
 opinion and argues that
 
 P.H.A.C.
 
 does not deny the effect of Louisiana law to the Outer Continental Shelf but, rather, chooses between two mutually exclusive statutory provisions, giving effect to the Private Works Act to the exclusion of the Oil Well Liens Act.
 
 [2]
 

 After giving careful consideration to these competing positions we find that
 
 P.H. A.C.
 
 does not supply the rule of decision in this case.
 
 P.H.A.C.
 
 defined the territorial limits of Louisiana state law, and found that those limits did not extend to the Outer Continental Shelf adjacent to the state of Texas.
 
 P.H.A.C.
 
 denied effect to the Oil Well Liens Act because
 

 [t]he statute seems to contemplate that the lien be on the well, the lease, or property located on the lease. In this case, the building was ultimately located on a lease, but a lease which is completely outside the state. The statute does not purport to affect producing wells outside the State of Louisiana.
 

 Having ruled out the Oil Well Liens Act, the court gave effect to the Private Works Act because it found that work was performed on an immovable structure while it was still located in Louisiana/ Under the Private Works Act the lien attaches on a structure when and where it is built, not where it is ultimately located. As the court of appeals in
 
 P.H.A.C.
 
 explained,
 

 [S]ince the unit (res) was located in St. Mary Parish when the lien affidavits were filed and still there when suits seeking to have the liens and privileges recognized were filed, there can be no question of the court’s jurisdiction over the subject matter. It is well established
 
 *1134
 
 as a general rule that, where the jurisdiction of the person or of the res has once attached, it is not defeated by the removal of the person or the res beyond the jurisdiction of the court.
 

 P.H.A.C. v. Seaways International, Inc.,
 
 393 So.2d 117, 123-24 (La.Ct.App.1980) (citations omitted),
 
 aff'd,
 
 403 So.2d 1199 (La.1981).
 

 The question posed by
 
 P.H.A.C.
 
 differs from the question in the case before this court.
 
 P.H.A.C.
 
 did not determine which of its two lien statutes, the Oil Well Liens Act or the Private Works Act, applied to immovables located on the Outer Continental Shelf off the coast of Louisiana. It denied extraterritorial effect to both statutes, applying the Private Works Statute because under its terms, a lien attached to the property in question while it was still located in Louisiana. By contrast, the question we must answer is how best to give effect to the Louisiana lien statutes which are extended under the Lands Act to federal waters off the Louisiana coast. Setting
 
 P.H.A.C.
 
 aside, we direct our attention to deciding what
 
 federal
 
 rights are afforded under the two Louisiana statutes in question.
 

 III.
 

 A. The Oil Well Liens Act
 

 The Oil Well Liens Act, section 9:4861, provides in pertinent part:
 
 [3]
 

 Any person who performs any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water, or who performs any labor or service in the operation or in connection with the operation of any oil, gas or water well or wells, or performs any labor or service in the construction, operation, or repair or in connection with the construction, operation, or repair of any flow lines or gathering lines, regardless of their length, which are attached to or connected with the oil, gas or water well or wells, and any pipeline owned by the producer, operator or contract operator of the well, has a privilege on all oil or gas produced from the well or wells, and the proceeds thereof inuring to the working interest therein, and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, pipelines, flow lines, gathering lines and other related equipment, including, but not limited to, monitoring, measuring, metering and control equipment, appurtenances, appliances, equipment, buildings, tanks, and other structures thereto attached or located on the lease, and rights-of-way in the case of a gathering line, flow line or other producer, operator or contract operator owned pipeline for the amount due for labor or service, in principal and interest, and for the cost of preparing and recording the privilege, as well as ten percent attorney’s fees in the event it becomes necessary to employ an attorney to enforce collection.
 

 This statute confers lien privileges to laborers and providers of services whose work was done “in drilling or in connection with the drilling of any well,” or “in the operation of any oil, gas or water well.”
 

 In
 
 P.H.A.C.
 
 the Louisiana Supreme Court determined that an offshore drilling platform living quarters unit “was designed to be used ‘in connection with the operation’ of oil or gas wells” as required by the Oil Well Liens Act, section 9:4861. 403 So.2d at 1202. Because the court went on to hold that the Oil Well Liens Act did not apply to any property located outside of Louisiana, this determination is dictum. We can conceive of no basis, however, for supplanting this ruling with a contrary rule of our own making. We proceed, therefore, on the assumption that work performed by appellants was “in connection with the drilling of any well.”
 

 We next turn our sights to the filing requirements of the Oil Well Liens Act.
 
 *1135
 
 Section 9:4862 (West 1983) provides in pertinent part:
 

 If a notice of such claim or privilege ... is filed for record and inscribed in the mortgage records of the parish where the property is located within one hundred eighty days after the last day of the performance of the labor or service ... the privileges are superior to all other privileges or mortgages against the property [with some exceptions].
 

 It is clear that the appellants made a filing within the one hundred eighty day filing period. What is not clear, however, is whether a filing was made in the mortgage records of the parish where “the property is located.” CSI’s filings were made in St. Mary Parish; Cobum’s filings were made in St. Mary and Terrebonne Parishes. These filings were proper only if the property was “located” in St. Mary or Terre-bonne Parishes under the terms of section 9:4862. While “in some cases a lien might secure a claim for work performed away from the well or lease,” there is no basis in either the language of section 9:4861 or in the case law for permitting an encumbrance upon property not “located on” or “attached to” a lease or well.
 
 See P.H. A.C.,
 
 403 So.2d at 1202 (property must be located on lease);
 
 See also Continental Casualty Co. v. Associated Pipe & Supply Co.,
 
 447 F.2d 1041 (5th Cir.1971) (lien secured where onshore processing plant located in parish where lien filed was attached by a pipeline to the offshore lease);
 
 Louisiana Materials Co., Inc. v. Atlantic Richfield Co.,
 
 486 So.2d 776 (La.Ct.App.),
 
 rev’d on other grounds,
 
 493 So.2d 1141 (La.1986) (same).
 

 It follows then that “location,” as defined by section 9:4862, means location on the leasehold or at a place that is physically linked to the leasehold. Because the living quarters unit was not located on or linked to the leasehold when it was being constructed in St. Mary Parish, the filings in St. Mary or Terrebonne Parishes would not appear to create a security interest in the unit under the Oil Well Liens Act. Since there appears to be no statutory means of filing when the property at issue is located on a lease which is outside of any parish, as is the property in this case, it would appear that CSI and Coburn could not satisfy the filing requirements of section 9:4862 and thus would not have a security interest under the Oil Well Liens Act.
 

 Recently, however, the Louisiana Supreme Court has held that the recording of a lien is not necessary in order for a lien to be effective under the Oil Well Liens Act.
 
 Louisiana Materials Co., Inc. v. Atlantic Richfield Co.,
 
 493 So.2d 1141, 1143 (La.1986). In doing so, the court agreed with our reasoning in
 
 Continental Casualty Co. v. Associated Pipe and Supply Co.,
 
 447 F.2d 1041, 1054 (5th Cir.1971), where we held that a lien need not be filed in order to be valid against the owner under the Oil Well Liens Act.
 
 [4]
 
 493 So.2d at 1148. Accordingly, the absence of a place for filing is immaterial; the lien is still valid under the Oil Well Liens Act.
 
 [5]
 

 In light of
 
 Louisiana Materials,
 
 we find that the objectives of the Lands Act are best served by applying the Oil Well Liens
 
 *1136
 
 Act in this case.. Any other view would deny the protection of Louisiana’s lien laws to work performed in federal territory rather than within a Louisiana parish. We believe that our resolution of this case is consistent with our duty to effectuate Congress’ intent on one hand and Louisiana law on the other.
 

 IV.
 

 We hold that the Oil Well Liens Act applies in this case. Accordingly, the judgment of the district court is REVERSED, and the case is REMANDED to the district court for proceedings not inconsistent with this opinion.
 

 REVERSED and REMANDED.
 

 [1]
 

 . CSI has been paid a part of this amount for work it performed on another project. The balance remainding due on the project at issue in this case is $28,057.81.
 

 [2]
 

 . By the express terms of section 9:4808 application of either the Public Works Act or the Oil Well Liens Act precludes application of the other. Section 9:4808 D provides:
 

 This part [the Private Works Act] does not apply to:
 

 (1) The drilling of any well or wells in search of oil, gas, or water, or other activities in connection with such a well or wells for which a privilege is granted by La.R.S. 9:4861 [the Oil Well Liens Act],
 

 [3]
 

 . The Act has subsequently been amended slightly.
 
 See
 
 La.Rev.Stat.Ann. § 9:4861 (West Supp.1987). This amendment is not relevant to this case.
 

 [4]
 

 . Intervening Louisiana cases had appeared to cast doubt on our decision in
 
 Continental Casualty.
 
 The holdings of two recent cases made it appear that no lien could exist under Louisiana law in the absence of filing.
 
 See Louisiana Materials Co. v. Atlantic Richfield Co.,
 
 486 So.2d 776 (La.Ct.App.),
 
 rev'd,
 
 493 So.2d 1141 (La.1986);
 
 C-Craft Marine Services, Inc. v. LLOG Exploration Co.,
 
 470 So.2d 241 (La.Ct.App.),
 
 writ denied,
 
 472 So.2d 921 (La.1985). In its opinion in
 
 Louisiana Materials
 
 the Louisiana Supreme Court reversed the decision of the Court of Appeals, overruled the decision in
 
 C-Craft,
 
 and held that it agreed with our opinion in
 
 Continental Casualty.
 

 [5]
 

 . We note that the Louisiana Legislature recently passed 1986 La.Acts 191, which amends La. R.S. 9:4862 and 9:4865 to make recordation within the time specified in 9:4862 a requirement for preservation of the lien privilege.
 
 See
 
 La.Rev.Stat.Ann. § 9:4862 (West. Supp.1987). The statute thus appears to overrule the Louisiana Supreme Court’s decision in
 
 Louisiana Materials.
 
 This revision, however, is inapplicable to this case. We leave the question of whether this statute has any effect on the interaction of the Lands Act and Louisiana law to another day.