**C.F. DAHLBERG & CO., INC., d/b/a St. Mary Galvanizing Corp., Plaintiff–Appellee,**

v.

**CHEVRON U.S.A., INC., Defendant–Appellant.**

No. 87–4176.

United States Court of Appeals, Fifth Circuit.

Feb. 3, 1988.

David M. Culpepper, George R. Irvine, III, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for defendant-appellant.

Dirk van Ausdall, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, La., Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, La., for plaintiff-appellee.

Before REAVLEY, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellant challenges the district court's granting summary judgment in favor of C.F. Dahlberg & Co., d.b.a. St. Mary, holding that St. Mary had established valid liens for furnishing services or supplies to contractors for work on certain off-shore oil well leasehold platforms owned by Chevron.

## I. *Facts*

Appellee St. Mary galvanized numerous metal objects for two contractors, Watts Corp. and Tammco Unlimited, which were assembling materials to be incorporated into certain offshore oil drilling platforms owned by Chevron. Chevron paid Watts and Tammco for the delivered materials, but Watts and Tammco failed to pay St. Mary. St. Mary then sought recovery as provided under Louisiana law by filing liens against certain Chevron properties where, it claimed, the materials had been incorporated.

The galvanizing for Watts involved 200 pieces of pre-cut grating processed at its plant in Morgan City, Louisiana. Watts had previously shipped the grating to St. Mary to be galvanized. After galvanizing, the grating was then shipped back to Watts on St. Mary's trucks. Watts then incorporated these pieces of grating into an offshore drilling deck which it was constructing for Chevron. The deck was destined for a platform on Block 41CA, South Marsch Island. Watts failed to pay St. Mary the $6,508.88 Chevron had paid to it for the galvanizing work.

The galvanizing for Tammco involved various stair handrails, stair treads, angles, and rope eyes. Tammco transported the items to St. Mary to be galvanized, and trucks from Tammco later picked up the galvanized items from St. Mary's plant. St. Mary alleges that these galvanized items were ultimately used in connection with Tammco's work on two offshore drilling decks for Chevron destined for Block 287–A, Vermillion and Block 332–A, West Cameron. Tammco failed to pay St. Mary the $9,047.19 charge for galvanizing these items although Tammco had been paid by Chevron for them.

St. Mary filed affidavits of liens in the parishes adjacent to the offshore leased tracts upon which the drilling platforms were located against the three offshore leases as provided under the Louisiana Oil, Gas and Water Well Lien Act. La.Rev. Stat.Ann. § 9:4861 *et seq.* St. Mary then sued Chevron to enforce these liens on July 18, 1986. On July 29, 1986 the district court ordered the U.S. Marshal to sequester the liened properties. St. Mary filed a motion for summary judgment on September 29, 1986, which was denied on November 25, 1986.[1] St. Mary filed a second motion for summary judgment on January 26, 1987, claiming it was entitled to judicial

---

1. At that time, the district court relied on *St. Mary Iron Works, Inc. v. McMoran Exploration Co.,* 802 F.2d 809 (5th Cir.1986), construing it to mean that a § 9:4861 lien privilege was unavailable unless the galvanizing was performed on the lease location.

recognition of its lien claims as a matter of law.[2]

St. Mary supported its second summary judgment motion with the affidavits of three of its employees—Brown, a St. Mary truck driver; Romero, a St. Mary shipping and receiving clerk; and Taylor, Vice President of Administration for St. Mary. Brown's affidavit established that 200 pieces of galvanized grating had been delivered to Watts under an invoice specifying the Chevron South Marsch Island Block 41CA project. Romero's affidavit established that various items of steel were galvanized and loaded into Tammco trucks on two occasions. Invoices for these items showed them destined for Chevron projects on West Cameron Block 332–A, Vermillion Block 287–A, and West Cameron Block 560–A. Taylor's affidavit verified the invoices which were issued in connection with the galvanizing services. Watts was billed $6,508.88 for Chevron South Marsch Island Block 41CA work; Tammco was billed $377.26 for the West Cameron Block 332–A work, and $8,669.93 for the Vermillion Block 287–A and West Cameron Block 560–A work. However, of the $8,669.93 billed to Tammco, only $3,689.19 was designated explicitly for the Vermillion Block 287–A project. The invoice for the remaining $4,980.74 references both West Cameron 560–A and Vermillion Block 287–A, but does not indicate what items or amounts were allocated to each project.

The district court granted St. Mary's second motion for summary judgment on February 23, 1987, on the ground that St. Mary was a "supplier" under § 9:4861(B) of the Louisiana Act. The court's judgment, entered on March 12, 1987, found that St. Mary had a valid lien against three Chevron leases (South Marsch Island Block 41CA, Vermillion Block 287–A, and West Cameron Block 332–A). The judgment did not deal with West Cameron Block 560–A which had not been mentioned in St. Mary's pleadings although it had been referred to in the invoices. The total judgment was in the amount of $15,556.07 plus interest from the date of judicial demand, the costs of preparing and recording the privileges recognized, 10% attorney's fees, and all costs of the proceedings. The judgment did not allocate the amounts due among the three leases in question. Chevron has filed a timely appeal.

## II. *Issues on Appeal*

A. *Does St. Mary have valid liens under the Louisiana Oil, Gas and Water Well Lien Act?*

The Louisiana Oil, Gas and Water Well Lien Act grants a lien privilege to:

A. *Any person* who *performs any labor or service* in drilling or in connection with the drilling of any well or wells in search of oil, gas or water, or who performs any labor or service in the operation or in connection with the operation of any oil, gas or water well....

B. *Any person* who ... *furnishes any* ... equipment, *material or supplies* for or in connection with the drilling of any well or wells in search of oil, gas or water ... whether or not such materials, machinery, equipment, services and supplies are incorporated in or become a part of the completed oil, gas or water well....

La.Rev.Stat.Ann. § 9:4861 (1984). (Emphasis added).

St. Mary claims that it can recover under either subsection A or B of § 9:4861. St. Mary first claims that it performed a labor or service in connection with the drilling of oil wells under § 9:4861(A) by providing galvanizing services to Chevron via contractors Watts and Tammco. St. Mary falls within the literal terms of the statute, and the case law supports that interpretation. St. Mary galvanized pieces of steel that were at all times designated to be incorporated by Chevron's contractors into drilling platforms to be located on Chevron's leases. St. Mary clearly provided a service in connection with the drilling of oil wells: it galvanized steel pieces that were incorporated into drilling platforms.

---

2. St. Mary contended that *St. Mary Iron Works* did not support the proposition that to qualify for a § 9:4861 lien the work had to be performed on the lease site.

The fact that the work was not actually done on the drilling site is not determinative, especially in light of the fact that these were *offshore* leases. Galvanizing is not the kind of service readily performed at sea. In *P.H.A.C. Services, Inc. v. Seaways International, Inc.*, 403 So.2d 1199 (La. 1981), the Louisiana Supreme Court said in dictum: "It is clear from the statute that in some cases a lien might secure a claim for work performed away from the well or leases." *Id.* at 1202. We have accepted the Louisiana Supreme Court's dictum as the current Louisiana law. *St. Mary Iron Works, Inc. v. McMoran Exploration Co.*, 809 F.2d 1130, 1134–35 (5th Cir.1987).

Appellant attempts to rebut this claim on the authority of a 50 year-old case holding that an oil well lien was not available where the activities of the party seeking it were too remote from the oil and gas venture. *Gleason v. Twin Cities Drilling Company*, 183 So. 67, 68 (La.Ct.App.1938) (scouting other oil wells in vicinity not within the Act).[3] Under more recent Louisiana case law, however, St. Mary's performance cannot be considered too "remote" despite the physical distance from its factory to the platforms' eventual locations in the Gulf of Mexico and the intermediary presence of contractors between St. Mary and Chevron. *See Texas Pipe and Supply Co. v. Coon Ridge Pipeline Co.*, 506 So.2d 1296 (La.Ct.App.1987) ("furnisher of a furnisher" of material and supplies was allowed to recover under § 9:4861); *Oilwell Supply Co. v. Independent Oil Co.*, 219 La. 936, 54 So.2d 330, 332–33 (1951).

Other entities who have been held proper claimants under § 9:4861 include: The owner of a crewboat which provided transportation to workers on a pipeline construction project, *Continental Casualty Co. v. Associated Pipe & Supply Co.*, 447 F.2d 1041,

1054–56 (5th Cir.1971); a caterer who furnished food, lodging, and housekeeping services on pipeline construction, *id.;* and a claimant who supplied divers to work on an offshore oil pipeline project, *Continental Casualty Co. v. Associated Pipe & Supply Co.*, 310 F.Supp. 1207, 1226 (E.D.La.1969). The coverage of § 9:4861 is clearly broad and comprehensive. Chevron's arguments that § 9:4861 should be narrowly construed to defeat St. Mary's claims are not persuasive.

■ St. Mary also claims coverage under § 9:4861(B), on the ground that in galvanizing the steel pieces it had furnished material or supplies in connection with the drilling or operation of wells. The pieces of steel were fabricated or supplied by the contractor and then delivered to St. Mary for galvanizing. We agree with the district court that the application of a protective coating of zinc to these pieces of steel constitutes furnishing "material" or "supplies" under § 9:4861(B).[4] Hence, our conclusion is that St. Mary properly claims the applicability of both (A) and (B) of the section.

B. *Did St. Mary Establish its Right to Recovery Under § 9:4861 as a Matter of Law?*

■ We have found that the services and materials provided by St. Mary are of the type covered by § 9:4861. The remaining issue is whether St. Mary's documents and affidavits left any material fact issues unresolved. St. Mary showed through affidavits and invoices that the pieces of steel it galvanized were identified with particular drilling platforms that were destined for specific Chevron leases on the outer continental shelf in the Gulf of Mexico. All the pieces of galvanized steel in question were delivered either to the contractor en-

---

**3.** *Gleason* is distinguishable from the present case. It was concerned with the provision of services only, not supplies or materials, and none of those services pertained to the drilling or operation of particular wells. We need not consider whether *Gleason* may still be good law in Louisiana.

**4.** Appellant refers us to *Sklar v. Lilly–Thompson Drilling Corp.*, 45 F.Supp. 470 (W.D.La.1942) *aff'd sub nom. Sklar v. Oil Incomes, Inc.*, 133 F.2d 512 (5th Cir.1943) as counter-authority. The case is inapposite. In *Sklar*, the equipment in question (an oil rig) was used by a contractor who drilled wells on the lease, but was not worked or incorporated into the owner's property, and was found to be removable therefrom.

gaged in constructing the drilling platforms or to the contractor's construction yard where the platforms were being constructed.

Under Louisiana law this showing effectively shifted the burden to Chevron to show that the galvanized pieces were not actually used in the construction of drilling platforms destined for the Chevron leases. *See Hattiesburg Manufacturing Co. v. Pepe,* 140 So.2d 449, 455 (La.Ct.App.1962) in which the court said, "It is well established in our jurisprudence that a seller of materials need only establish delivery of the materials to the contractor and thereupon the burden shifts to the owner who must then show that the materials were not in fact used in the construction of his building." (Louisiana Private Works Act § 9:4812). *See also Sundbery's Inc. v. Price,* 117 So.2d 328, 330 (La.Ct.App.1959); *Louisiana Lumber Supply Co. v. Reeves,* 55 So.2d 64, 68 (La.Ct.App.1951). Although there are no cases discussing such a shifting of the burden of proof in the context of a § 9:4861 lien, this analysis is wholly consistent with the legislative purposes of § 9:4861.[5]

The district court correctly applied this analogous line of authority to the present case. To hold otherwise would put a heavy burden on service providers and materialmen. In order to recover under § 9:4861 they would have to send employees out to offshore drilling platforms to participate in incorporating or using the materials, supplies, services, etc. on a particular platform. Also, service providers and materialmen would need to arrange to have their employees present at the contractor's onshore construction yard to establish the link to the offshore lease. We do not believe that the Louisiana legislature intended such consequences. The fact that St. Mary performed "services" at its plant (rather than on the drilling platforms actually located on the leases) and galvanized the materials provided to it by intermediate

contractors does not change the statutory impact. These materials were at all times designated to be incorporated into specific platforms on specific Chevron leases.

The district court's judgment accords with the principle of strict construction applied by Louisiana courts to the interpretation of lien statutes. *P & A Well Service, Inc.* at 282; *Willis v. Mills Tooke Properties, Inc.,* 42 So.2d 548 (La.Ct.App.1949). The present case differs significantly from *P & A Well Service,* in which the court found that the furnisher of the intermediate contractor did not know that the equipment in question was to be used on a certain property and for a certain purpose, but furnished it only as part of a general rental agreement. *Id.* at 282–83. Here the appellant knew that his materials/services were to be used in the construction of well platforms on specific lease sites. The district court noted that in *St. Mary Iron Works,* 809 F.2d at 1134, we make it clear that the Oil, Gas and Water Well Lien Act applies to creditors who supply goods or materials which are incorporated into offshore wells, whether or not the work was performed on the leasehold property. *See also Continental Casualty Co.,* 447 F.2d 1041, 1054–60.

Further, the district court correctly observed that the Act does not require a plaintiff to prove that its materials or supplies were actually incorporated into or became part of the completed well or wells. La.Rev.Stat.Ann. § 9:4861(B). At the hearing on appellee's motion for summary judgment, appellant failed to submit any affidavits, discovery items, or even pleadings that showed that the pieces of galvanized steel did not end up where St. Mary claimed they did. As a result, Chevron did not raise any genuine issues of material fact in opposition to St. Mary's motion. The district court found the proof offered by St. Mary sufficient to allow its recovery under § 9:4861. We agree.

*See P & A Well Service, Inc. v. Blackie's Power Swivels, Inc.,* 507 So.2d 280, 283–84 (La.Ct.App.), *cert. denied,* 513 So.2d 288 (La.1987); *Sklar,* 133 F.2d at 515.

---

**5.** The public policy purpose underlying § 9:4861 is to promote and encourage oil industry development by affording special protection to suppliers of services and materials from damages resulting from defaulting owners or contractors.

Appellant now argues for the first time on this appeal that St. Mary did not place a lien on the West Cameron Block 560–A lease and did not attempt to enforce such a lien in this suit. Since the prescription period for placing such a lien may have run by now, appellant claims that appellee cannot recover for the $4,980.74 worth of galvanized steel which, appellant urges, might have gone to either the Vermillion Block 287–project or the West Cameron Block 560–A project.[6]

Appellant had the opportunity to raise this issue by way of affidavit or other evidence in response to St. Mary's motion for summary judgment. Appellant failed to do so. Instead, it merely asserted that St. Mary's motion for summary judgment urged no new grounds, was ill-founded as to Louisiana law, and that St. Mary's supporting affidavits failed to establish its claims. The district court had before it only the uncontroverted facts attested in the affidavits filed by St. Mary. They showed that the galvanized items listed on the invoices were provided for the construction of the drilling platforms on the leases on which the court found that St. Mary had valid liens. Chevron did not dispute these factual claims before the district court. As mentioned earlier, Chevron filed no affidavits or other documents at all in opposition to St. Mary's motion for summary judgment.

In its ruling of February 23, 1987, granting St. Mary's motion the district court stated:

> The undisputed affidavits filed by [St. Mary] clearly show delivery of the supplies to the contractors and the amount owed for them. The invoices identify for which leases these supplies were intended. Under the law, this entitles the plaintiff to an enforceable lien on the leases, regardless of ownership or wheth-

er the supplies w[e]re actually incorporated in wells on the leases.

Chevron may not now for the first time dispute facts contained in St. Mary's affidavits submitted to the district court.[7] On a motion for summary judgment, the opponent bears the burden of establishing that there are genuine issues of material fact, and may not wait until trial or appeal to develop claims or defenses in response to the summary judgment motion. *Golden Oil Co. v. Exxon Co., U.S.A.*, 543 F.2d 548, 551 (5th Cir.1976). In the absence of exceptional circumstances which would result in a miscarriage of justice, a condition not present here, questions not presented to the trial court will not be considered on appeal. *D.H. Overmyer Co. v. Loflin*, 440 F.2d 1213, 1215 (5th Cir.), *cert. denied*, 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971).

## III.  *Conclusion*

We look only to the factual evidence in the record at the time the court granted the motion for summary judgment. We find that there was sufficient and uncontroverted evidence to support the judgment and that the district court correctly applied relevant law. The motion for summary judgment was providently granted.

AFFIRMED.

---

6. Tammco was billed $8,669.93. One invoice showed that $3,689.19 of the galvanized steel was specifically designated for the Vermillion Block 287–A project. Another invoice, for $4,980.74 galvanizing for Tammco, referenced both West Cameron 560–A and Vermillion 287–A. Appellee's Vice President for Administration, Taylor, stated in his affidavit that the $4,980.74 invoice was for galvanizing items for the platform to be located at Vermillion Block 287–A.

7. Chevron has not denied that the leases in question, including West Cameron 560A, belonged to it or that the galvanized pieces were provided to platforms on those leases.