# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 29, 2010

No. 08-50881

Charles R. Fulbruge III
Clerk

ANTHONY MORALES,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA; BUREAU OF PRISONS,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas, El Paso Division
3:07-cv-000044-KC

Before WIENER, GARZA, and ELROD, Circuit Judges.

PER CURIAM:[*]

Anthony Morales sued the United States Government and the Bureau of Prisons[1] (BOP) under the Federal Tort Claims Act (FTCA) for negligently failing to protect him after he was beaten in prison. The district court granted summary judgment for the United States, ruling that the discretionary function exception to the FTCA barred Morales's suit. Morales appeals this judgment arguing that (1) his claim did not fall within the discretionary function exception

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

[1] Morales does not challenge the district court's dismissal of his claims against the Bureau of Prisons.

No. 08-50881

to the FTCA, and (2) the Government put forward insufficient evidence to support a finding that the discretionary function exception applied. We AFFIRM the judgment of the district court.

## I. FACTS AND PROCEEDINGS

In 1980, Morales pleaded guilty to various drug offenses, for which he received a five-year prison sentence and a special parole term of ten years. Over the next twenty-five years, he returned to prison periodically on new convictions and various parole violations. In 1991, Morales joined a prison gang known as the "MexiKanemi," or "Texas M." He achieved the rank of "shot-caller," which enabled him to make decisions on behalf of many gang members housed at the institution where he was incarcerated. At some point prior to August 2005, he had a falling-out with the gang, and he became a target for gang violence by the MexiKanemi.

In December 2004, Morales was arrested for parole violations, and he was incarcerated at Dona Ana County Detention Center. On August 26, 2005, officials transferred Morales to Federal Correctional Institution-La Tuna (FCI-La Tuna) in Anthony, Texas. He was initially placed in segregation at the Special Housing Unit (SHU) for intake processing. Morales contends that, at his intake interview, he informed the interviewer that the MexiKanemi gang had put a "hit" on him. According to Morales, the interviewer told him that Clyde, the leader of the MexiKanemi gang in West Texas, was incarcerated at FCI-La Tuna, and that Morales would be kept in the SHU to ensure his safety until he could be transferred to Federal Satellite Low-La Tuna (FSL-La Tuna), a facility located on the military base at Fort Bliss. The Government denies that Morales alerted the interviewer to any danger from the MexiKanemi gang, positing instead that the decision to send Morales to FSL-La Tuna was made prior to the time Morales allegedly expressed his concerns. Morales's intake interview

2

screening form indicated that Morales gave no reasons for why he should be kept separate from the general population; however, the form contained a checked box stating that he was not "OK for general population." The form also reflected the following information:  Morales had been designated as a Central Inmates Monitoring (CIM) prisoner due to his prior gang involvement; his intake interviewer suspected him to be a member of the MexiKanemi gang; and Morales had been designated for transfer to FSL-La Tuna.

On September 1, 2005, a case-management coordinator informed Morales that he would be placed in general population at FCI-La Tuna.  Morales contends that he told prison officials that such a placement would endanger his life, but the Government denies that Morales gave any such warning.  Shortly after his transfer to general population, Morales was present but uninjured at a fight between members of a rival gang and two of Morales's acquaintances—Milan and Cowboy.  Morales thereafter requested to be placed in segregation, and he was assigned to a SHU cell with "Milan" and "Cowboy." At some point, Morales learned that Milan and Cowboy were attempting to get into the MexiKanemi gang.  On September 8, Morales encountered Milan and Cowboy in a recreation cage with other inmates.  Milan and Cowboy began talking suspiciously with another inmate, prompting Morales to alert a guard that he feared an attack by Milan and Cowboy.  According to Morales, the guard told him that he would look into his concerns but not to worry in the meantime. Later that evening, Milan and Cowboy savagely beat Morales, breaking his jaw and causing severe injuries to his face, ears, head, and neck.  Officials rushed Morales to the hospital, where he received treatment in the intensive care unit.

Following the attack, Morales sued the United States Government and the Bureau of Prisons under the FTCA for negligently failing to protect him from known dangers.  The Government moved for summary judgment on the ground that Morales's claim was barred by the discretionary function exception to the

No. 08-50881

FTCA. According to the Government, decisions regarding the classification and transfer of prisoners between SHU facilities and general population and decisions concerning the separation of inmates who may pose threats to other inmates were within the discretion of prison officials. The Government supported its argument with a declaration by FCI-La Tuna's warden, M. Travis Bragg. The declaration stated that Bragg was familiar with the rules and regulations governing prisoner safety, and that the decision to transfer a prisoner to segregation was within the discretion of the warden. Bragg also referenced the Fifth Circuit's decision in *Ashford v. United States*, 511 F.3d 501 (5th Cir. 2007), in which this court found a genuine issue of material fact where two prison officials testified to the existence of a mandatory policy requiring the transfer of certain prisoners to segregation. Bragg explained that those officials either misinterpreted the discretionary nature of the relevant policies, or alternatively, the officials were describing a policy unique to their specific prison, as no such mandatory policy existed at FCI-La Tuna. With regard to Morales's contention that he was supposed to be transferred to FSL-La Tuna, Bragg's declaration stated that Morales would not have been placed at FSL-La Tuna because prisoners with gang ties were considered a threat to Fort Bliss security.

The magistrate judge recommended denying summary judgment because a material fact existed regarding whether the prison was obligated to segregate Morales after he voiced his safety concerns. The district court initially agreed and denied the motion, concluding that BOP Program Statement No. 5180.04 arguably required prison officials to segregate and protect CIM prisoners like Morales. Upon the Government's motion for reconsideration, the district court determined that the Program Statement "does not, however, mandate procedures for housing, segregating, and protecting prisoners in the CIMS." It also concluded that the CIMS program statement did grant wardens the discretion to develop local procedures and identify staff responsibilities for the

4

No. 08-50881

CIMS program, conduct which the court found "involve[d] an element of judgment or choice." (citation omitted). Finding that the "discretionary function exception applies in this case," the court granted the Government's summary judgment motion on the ground that it lacked jurisdiction to hear the case due to governmental immunity. Morales has filed a timely appeal, arguing that our decision in *Ashford* constitutes summary judgment evidence "that BOP has a policy and regulation mandating the isolation or protection of inmates who raise safety concerns until those concerns are addressed and extinguished." He also urges us to find that the district court's grant of summary judgment was improper because the Government presented no evidence that an actual "decision" was made to place Morales in general population at FCI-La Tuna, but because Morales raised this argument for the first time on appeal, we do not consider it.[2]

## II. STANDARD OF REVIEW

This court "review[s] a grant of summary judgment *de novo*, applying the same standard as the district court," and we consider all evidence "in the light most favorable to the nonmoving party." *Broussard v. Procter & Gamble Co.*, 517 F.3d 767, 769 (5th Cir. 2008) (citations omitted). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and

---

[2] Morales argues that, in absence of evidence of an actual "decision," there is insufficient evidence to conclude that the discretionary function exception applied to the officials' actions in placing him in general population. According to Morales, BOP's "decision" to place him in general population at FCI-La Tuna was not a product of "judgment or choice"—it was merely a clerical or administrative mistake. *See Payton v. United States*, 679 F.2d 475, 480 (5th Cir. 1982) ("Discretionary decision-making . . . is accompanied by nondiscretionary acts of execution, whether termed operational, ministerial, or clerical."). Before the district court, he argued that the Government failed to explain why it decided to keep him at FCI-La Tuna. Here, he contends that the Government presented no evidence that it made any decision *at all* to keep him at FCI-La Tuna, as Bragg's declaration is insufficient to prove that his placement was the product of choice and not of accident. Because Morales did not raise this argument before the district court, we will not consider it here for the first time on appeal. *See C.F. Dahlberg & Co., Inc. v. Chevron U.S.A., Inc.*, 836 F.2d 915, 920 (5th Cir. 1998).

any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When a proper motion for summary judgment is made, a nonmoving party who wishes to avoid judgment by establishing a factual dispute must set forth specific facts showing that there is a genuine issue for trial." *Hanks v. Transcon. Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992) (footnote omitted).

## III. DISCUSSION

"As the sovereign, the United States is immune from suit unless, and only to the extent that, it has consented to be sued." *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994) (citations omitted). By enacting the FTCA, the United States consented to be sued "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *cf. United States v. Muniz*, 374 U.S. 150, 151 (1963) (confirming that the FTCA permits federal prisoners to sue the United States for injuries sustained while incarcerated). The substantive law of the state which is the site of the alleged tort governs claims under the FTCA, and the common law or statutory elements of the state law claim must be satisfied. *See* §§ 1346(b)(1), 2674; *Richards v. United States*, 369 U.S. 1, 9-10 (1962). The United States's consent to suit under the FTCA is limited by the discretionary function exception, which precludes liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception "covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'" *United States v. Gaubert*, 499

No. 08-50881

U.S. 315, 322 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).[3]

Morales seeks recovery under the FTCA for both his placement in general population at FCI-La Tuna and his later placement in a segregated housing unit cell with Milan and Cowboy after Morales notified prison personnel that these cell-mates posed a danger to his safety. The court uses a two-step analysis to determine whether prison officials' actions in placing Morales fall within the discretionary function exception to the FTCA. "First, for the exception to apply, the challenged act must involve an element of judgment. In other words, the Government needs to establish there was 'room for choice' in making the allegedly negligent decision," as opposed to a decision compelled by a mandatory policy or directive. *Ashford v. United States*, 511 F.3d 501, 505 (5th Cir. 2007) (footnotes omitted). If step one is satisfied, step two requires that "the judgment [be] of the kind that the exception was designed to shield." *Id.* "The purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 323 (citation and internal quotation marks omitted). Thus, if a federal employee violates a mandatory regulation, the Government may be held liable. *Id.* at 324. But if a regulation "allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the

---

[3] "At the pleading stage, [the] plaintiff must invoke the court's jurisdiction by alleging a claim that is facially outside of the discretionary function exception," but courts are divided as to which party must ultimately prove whether the discretionary function exception to a waiver of sovereign immunity applies. *St. Tammany Parish, ex rel. Davis v. FEMA*, 556 F.3d 307, 315 & n.3 (5th Cir. 2009). On a review of summary judgment, the plaintiff must submit evidence that the claim is "facially outside the discretionary function exception . . . regardless of which party bears the ultimate burden of proof." *Id.* (discussing plaintiff's burden on review of a motion to dismiss).

promulgation of the regulations." *Id*; *see Berkovitz*, 486 U.S. at 537 (explaining that the exception "protects only governmental actions and decisions based on considerations of public policy.")

The Government contends that the discretionary function exception was triggered because placement decisions were within the discretion of BOP officials.   Morales disputes the application of the exception, arguing that he presented summary judgment evidence establishing that his placement was subject to a particular mandatory policy, and that BOP employees violated this policy when they determined his placements.  He  points solely to our decision in *Ashford v. United States* as competent summary judgment evidence establishing the existence of a policy at FCI-La Tuna "mandating protection of an inmate when BOP is on notice of actual danger."

In *Ashford*, federal prisoner Edward Ashford had been transferred to a high-security prison in Washington D.C. as a result of his disciplinary infraction at a medium-security facility.  *Ashford*, 511 F.3d at 503. Ashford had been involved in several fights, and prison officials had issued a separation order forbidding Ashford from being housed in the same prison with inmate Kelvin Smith, who previously had attacked Ashford.  *Id.*  Upon arrival at the high-security prison, Ashford allegedly informed his intake interview officer that he should not be placed in the general population if Smith was also in general population, and officials erroneously assured him that Smith was not at that facility.  Officials placed Ashford in general population, where he was then attacked at Smith's direction.  *Id.* at 504.  Ashford sued the Government under the FTCA for the severe injuries he sustained in the attack, but the district court granted summary judgment for the Government on the ground that the discretionary function exception deprived the court of jurisdiction.  We reversed this decision on appeal, noting that prison official Patricia Doty testified at the

Flowers hearing[4] that when an inmate raised such a safety concern at the intake interview, "prison policy *required* him to be put into solitary confinement until an investigation could be conducted." *Id*. at 505. Another official testified that "if Ashford indicated that there was a security risk with another inmate, the 'only procedure' he would have followed would have been to place Ashford in special housing and a further investigation would have been conducted." *Id*. at 503. Nevertheless, "that procedure was not followed and Ashford was placed in the general population." *Id*. Because this testimony suggested the existence of a mandatory policy, the violation of which could give rise to liability under the FTCA, we concluded that "summary judgment on the discretionary-function exception was improper." *Id*. at 503.

Although *Ashford* is factually similar to the instant case, we cannot conclude that the policy in effect in *Ashford*, which precluded summary judgment in that case, also constitutes competent summary judgment evidence here. Morales has provided no evidence that the policy described in *Ashford*—which applied to the Federal Correctional Complex in Beaumont, where Ashford was housed—also governed the actions of officials at FCI-La Tuna. At oral argument, he argued that the policy in *Ashford* was BOP Program Statements 5290.12 and 5180.04. Morales has provided no evidence, however, to support this inference, and he has not established that either of these Program Statements—in and of itself—constitutes a mandatory policy precluding placement discretion.[5] To refute Morales's contention that the

---

[4] A Flowers hearing is a "bench trial replete with credibility determination and findings of fact." *McAfee v. Martin,* 63 F.3d 436, 437 (5th Cir. 1995)*; see also Flowers v. Phelps*, 956 F.2d 488 (5th Cir.), *modified in part on other grounds*, 964 F.2d 400 (5th Cir.1992).

[5] In the fact section of his brief, Morales states that BOP Program Statement 5290.12 "mandates that BOP Personnel segregate inmates such as Morales from others." BOP Program Statement 5290.12 provides that "[s]taff shall place particular emphasis on the Central Inmate Monitoring ('CIM') status of the holdover, since, ordinarily, an inmate may not be transported or confined with inmates from whom he or she is to be separated, " and it also lists procedures

No. 08-50881

*Ashford* policy is applicable in this case, the Government submitted the declaration of FCI-La Tuna Warden M. Travis Bragg, who testified that the policy described in *Ashford* does not exist at FCI-La Tuna and that the decision whether to place an inmate in segregated housing was within the discretion of the warden. Without evidence that the policy referenced in *Ashford* also applies at FCI-La Tuna, Morales cannot rebut the Government's evidence that it had discretion in determining Morales's placement.

In sum, Morales has failed to set forth summary judgment evidence that the policy found to be mandatory in *Ashford* applies, and he has brought forth no other evidence of a mandatory policy that would have required officials to give Morales an alternative placement. In the absence of summary judgment evidence that his placement was not within the discretion of prison officials, we are without jurisdiction to grant relief on his claims.

We AFFIRM the judgment of the district court.

---

"staff shall" follow "[t]o ensure separatees are not housed together." Morales provided no summary judgment evidence to support the conclusion that Milan and Cowboy were "separatees" from Morales within the meaning of the Program Statement, and he has waived the argument that Program Statement 5290.12 is competent summary judgment evidence of a mandatory policy by failing to include such an argument in the statement of issues or the body of his brief. *See United States v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000); *see also* Fed. R. App. P. 28(a)(9)(A)&(B). Morales has not argued that prison officials ever entered an order of separation requiring that he not be housed with Cowboy and Milan, so this case is distinguishable from *Ashford*. There, prison officials had entered an order of separation requiring that Ashford not be placed in the same prison with Smith, his eventual attacker. *See Ashford*, 511 F.3d at 503.

In addition, Morales has not challenged the district court's finding that BOP Program Statement No. 5180.04 does not "mandate procedures for housing, segregating, and protecting prisoners in the CIMS," nor does it "require the Government's employees to protect prisoners in any specific manner."

10